SANDERS, Chief Justice.
In this case, we must determine the contractual obligations arising out of the following transactions:
Clark leased and occupied 507 Decatur Street, New Orleans. The lease contained an option to purchase which Clark exercised. Consequently, Clark entered into an agreement to purchase with “Harrison Property Management Co. Inc. by — W. H. Harrison, Pres.” Later Clark transferred his rights under the agreement to purchase to Bannister. Certain problems involving merchantable title to the property arose. This suit resulted.
Originally, Clark and Bannister sought specific performance or damages arising out of defendants’ failure to deliver title.[1] However, plaintiffs now seek damages only. The lower courts rejected plaintiffs’ demands, and we granted writs. (La.App. 4th Cir. 1977); La., 353 So.2d 1042 (1978).
The pertinent provisions of the agreement to sell provide:
“The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, and reserving unto agent the right to recover commission.
“In the event the seller fails to comply with this agreement for any other reason, within the time specified, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option.”
The necessary real estate and financial preparations for the sale proceeded without difficulty until the title examiners informed the lending institution that they could not approve the title to the property unless the following requirements were fulfilled:
“The succession of Mrs. Margaretha Gondolf, widow of Jacinto F. Baltar, must be opened and her heirs recognized and placed in possession. In the Succession of William W. Baltar, No. 198-961 of the docket of the Civil District Court, there is an allegation in a petition in the record that Mrs. Margaretha Gondolf Baltar died on July 4, 1932, and that her estate was administered in No. 12-781, Harrison County, Mississippi. If this is correct, ancillary proceedings will be necessary. “The transferors to the Harrison Property Management Co., Inc. must join in the sale by the corporation. This is necessary since the transfer to the corporation contained no reference to consideration paid, and for the additional reason that the charter of the corporation provides that it shall administer and manage the property of others, and that in connection therewith, it may hold title to said property but for administration and management purposes only. Regarding the above requirement we have some information that one of the said transferors is legally incapable of managing his own affairs, but this has not been confirmed and we do not know whether or not it is correct. However, if such is a fact, we must be advised and, accordingly, reserve the right to make additional requirements. “Fractional interests in the property are owned by Miss Katherine Loretta Harrison, Mrs. Shirley Harrison Hyde, and Richard Joseph Harrison, who inherited from the succession of their mother, Mrs. Katherine Cogan, deceased wife of Walter J. Harrison. It will also be necessary for them to join in the sale.”
*616 The title opinion precipitated a barrage of written and verbal communications regarding the title defects which had to be cured. However, the contract provided that the need for bona fide curative work in connection with the title automatically extended the May 15 act of sale for thirty days. Therefore, June 14, 1972 became the date set for the passing of the act of sale under the agreement to sell.
The evidence reflects that the title examiners were correct about the need for curative work. The title examiner, M. L. Dres-ner, testified at trial that the Baltar succession precluded merchantability because “[i]n the succession of Jacinto F. Baltar, his widow Margaretha Gondolf Baltar was left only the usufruct of the property and the basis for that was that he said in his will that he was judicially separated in property from his wife.” (Tr. p. 212.) Evidence of the separation could not be found to verify this fact.
Five children were born of the Baltar union. At least one of the heirs, William W. Baltar, was known to be deceased and his interest had passed to his descendants. Thus the succession possibly involved as many as thirty descendants of Mrs. Mar-garetha Baltar, whose whereabouts were unknown. For obvious reasons, the seller could not deliver a merchantable title to the property at the act of sale.
Moreover, the title examiner testified clearly that he never changed his opinion about the necessity for the opening of the Baltar succession prior to the date[2] of the act of sale, June 19, 1972, and that on that date the title was still not merchantable because of the Baltar succession. (Tr. p. 217.)
We, therefore, find that the Baltar succession presented an insurmountable obstacle for the seller to resolve before the date for the passing of the act of sale. Thus, a merchantable title could not be delivered by the seller, “within the time stipulated.”
Under the clear terms of the contract, which is the law between the parties, the seller was unable to deliver merchantable title within the time stipulated and the contract was rendered “null and void, reserving unto purchaser the right to demand the return of the deposit from the holder. Although the Court of Appeal recognized the right of return of the deposit in the body of the opinion, it merely affirmed the trial court judgment which did not order the return of the $2500 deposit. We now recognize that the Court of Appeal could not render judgment for the return of the deposit because the realtor, who held the deposit under the contract, was not a party to this litigation.
In light of the title defect which could not be corrected prior to the extended date of sale and which rendered the contract null and void, we pretermit treatment of other alleged causes for the contract’s nullity..
We hold, as did the Court of Appeal, that in view of the contractual provisions, the plaintiffs are not entitled to damages.
For the reasons assigned, the judgment of the Court of Appeal is affirmed, without prejudice to the right of plaintiffs to enforce the return of the deposit.

. Harrison Property Management Co., Inc., William Harrison, personally, and as its president, Walter J. Harrison and Lydia Harrison Couterie Ryan, personally and as its directors, as well as, Shirley Harrison Hyde, Katherine Loretta Harrison, and Richard Joseph Harrison, who together owned one-sixth of the property at issue as heirs of their mother, Mrs. Walter J. Harrison, are named defendants. Upon the death of William Harrison his succession was substituted as a party defendant.

. The original date for the passing of the act of sale was May 15, 1972. It was extended pursuant to the provisions of the contract until June 14, 1972. Then that extended date was mutually extended to June 19, 1972 for the convenience of and in order to secure the presence of Mr. William H. Harrison.