417 So.2d 426 (1982)
David R. WILLIAMS and Marie T. Williams
v.
Dr. Relvert COE.
No. 14945.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
*427 Gerald L. Walter, Jr., Baton Rouge, for plaintiffs-appellees David R. Williams and Marie T. Williams.
Donn Moss, Baton Rouge, for defendant-appellant Dr. Relvert Coe.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
The issues presented are whether or not the defendant breached an agreement to sell certain property to the plaintiffs, and whether or not certain claims arising out of the agreement are compensable. The facts giving rise to this dispute are as follows. Dr. Relvert Coe and his late wife, Jean Dasher Coe, were owners of a certain piece of property identified as Lot 7, Square 2, Glenmore Subdivision, in Baton Rouge, Louisiana. Mrs. Coe died in 1958 and her *428 four children[1] were placed in possession of her undivided one-half interest in the property by virtue of a judgment of possession. Thereafter, Dr. Coe married Phyllis Iris and they lived on the subject property until March 1976. Dr. Coe then moved to Florida. Shortly thereafter Phyllis Iris Coe filed a petition for separation and also a notice of lis pendens, claiming a community interest in the subject property.
On July 6, 1976, Dr. Coe signed a purchase agreement with David R. Williams and Marie T. Williams agreeing to sell the property for the sum of $59,900, dependent upon the Williams' ability to secure a loan. A lending institution approved the loan but the attorney for the institution noted that Dr. Coe was in fact the owner of only a one-half undivided interest in the property.
Dr. Coe (through his son Jason) assured Mr. and Mrs. Williams the act of sale would go through as soon as powers-of-attorney were secured from all the children. With Dr. Coe's permission, the Williams family moved into the residence (located on Longwood Drive) in August of 1976, and began making necessary repairs and improvements to the house and swimming pool.
Shortly after occupying the house the Williamses learned that in addition to their being some difficulty in obtaining the powers-of-attorney from the children, Phyllis Coe was making a claim against the house.
In April of 1977, Mrs. Coe caused a writ of attachment to be issued on the house and in March of 1979 a writ of fieri facias was issued.[2] The house was sold at a sheriff's sale in May of 1979 and the Williamses were required to vacate the premises in June of 1979.
The Williamses filed suit against Dr. Coe seeking damages for the breach of the purchase agreement. Dr. Coe reconvened for the reasonable rental value during the 35 months in which plaintiffs occupied the house, and for alleged damage to the premises.
The enforceability of the agreement was presented to the trial court in the form of a stipulation which essentially set forth the above mentioned facts. The court made a ruling on the stipulation as follows:
"Since the defendant new (sic) or should have known that he did not own the entire interest in the property at the time of purchase agreement, he should not have agreed to convey the entire interest.
"Therefore, the Court feels that he is subject to damages, if any can be proved, payable to plaintiffs."
Thereafter, a hearing was set to hear evidence on the issue of damages only.
After the hearing the court rendered judgment in favor of Mr. and Mrs. Williams and against Dr. Coe. The court noted Dr. Coe's claim for the reasonable rental value was offset by the Williams's claim for the appreciated value of the property, therefore no money was awarded on either of those claims.[3] The court awarded plaintiffs $4,545.75 for repairs and expenses including $2,435.75 for paint, $200 for electrical repairs, $1,710.00 for swimming pool expenses, and $200 for moving expenses. Plaintiffs were also awarded $1,300 for attorney fees, for a final total of $5,845.75. Dr. Coe appealed and Mr. and Mrs. Williams answered the appeal.
Appellant (Dr. Coe) raises three specific errors. First, he contends the purchase agreement was null and void by its own terms when after a reasonable period of time he was not able to deliver a merchantable title. The purchase agreement states the act of sale was to be passed within 60 *429 days, which would have been September 4, 1976. He calls particular attention to a part of the printed form which reads as follows:
"In the event title is not valid and cannot in reasonable time and at reasonable expense be made valid, this contract shall be null and void and the deposit shall be immediately returned."
Dr. Coe maintains since a merchantable title was not available after a reasonable length of time, the purchase agreement became null and void and plaintiffs are limited by the agreement to seek the return of their deposit, but should not recover damages. We agree the purchase agreement became null and void after a reasonable length of time but conclude the respective parties incurred certain obligations as incidents to the contract, for which they are liable.
During the first few months of their occupancy plaintiffs were aware of problems with obtaining clear title but, due to assurances and the ongoing negotiations between Dr. Coe and Mrs. Coe of which they were aware, were justified in remaining in the house with the hope title would be cleared and the sale passed. But when they learned of the writ of attachment in April of 1977, they were informed of the serious nature of the title problem. As admitted by Mr. Williams: "[W]e realized then that this was a serious problem and that the Act of Sale might ... might be in jeopardy." He added: "[I]t was explained to me at that time that the writ of attachment was going to make it impossible to clear the title until it was removed." At that point in time it was clear to Mr. and Mrs. Williams the defective title of which they had known for several months had not been made "valid" and that efforts to make it valid within a "reasonable time," provided for in the agreement, had finally failed. Some ten months had passed since the agreement was confected and we construe this period to fulfill the "reasonable time" requirement. Therefore, under the terms of the purchase agreement, the contract became null and void as of April 1977.
In the case of Clark v. Harrison Property Management Co., Inc., 359 So.2d 614 (La. 1978), a similar situation was presented. Therein, the seller could not convey title due to defects. The agreement provided: "The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit...." This provision is essentially the same as that found in the instant matter, the only difference being a particular time was stipulated as contrasted to the "reasonable time" provided for herein.
In Clark, after noting a merchantable title could not be delivered by the seller within the time stipulated, the Supreme Court, at page 616, held:
"Under the clear terms of the contract, which is the law between the parties, the seller was unable to deliver merchantable title within the time stipulated and the contract was rendered `null and void, reserving unto purchaser the right to demand the return of the deposit from the holder. * * *'"
We find Clark to be ample authority for our conclusion that, as of April 1977, the agreement between plaintiffs and defendant ceased to exist. Agreements legally entered into have the effect of laws on those who have formed them. La.Civ.Code art. 1901.
Plaintiffs seek to distinguish Clark on the basis the seller was not aware of the title defect which prevented it from delivering a merchantable title, urging certain language from an unreported decision at the Court of Appeal level which is annexed to their brief. As we are not at liberty to consider the unreported opinion, we pretermit the question of whether or not the language relied upon supports plaintiffs' position. See, Rule XII-A, Section 3, Uniform RulesCourts of Appeal. We do note, however, the corporate seller in Clark was represented by its president who presumably had knowledge of an outstanding one-sixth interest inherited by the children of *430 one of the parties at interest. The Supreme Court did not cite this fact as any lack of good faith on the part of the seller nor did it discuss its effect as related to a possible breach of the contract. Instead, it found another, more significant, defect to be an "insurmountable obstacle" to passage of the sale. This is not unlike the present situation where Dr. Coe may be charged with the knowledge of his children's undivided interest but it was the intervention of Mrs. Coe which turned out to be the "insurmountable obstacle" to conveying a valid title.
Actually, the notice of lis pendens claiming a community interest was filed by Mrs. Coe approximately three months before the purchase agreement was confected. This rendered the title suggestive of future litigation thereby making it unmerchantable at that time. Young v. Stevens, 252 La. 69, 209 So.2d 25 (1968). While Dr. Coe may be charged with knowledge of the filing of the notice of lis pendens due to the public records doctrine, he was in Florida at that time and any bad faith is negated by that fact as well as the obvious lack of any validity to Mrs. Coe's community claim.
Nor can we conclude Dr. Coe was in bad faith due to his knowledge of his children's interest in the property. One of his children was in frequent communication with the plaintiffs and was assisting in perfecting the title. There is nothing to indicate the other children would not have participated in the sale within a reasonable length of time. As a father, Dr. Coe may be attributed good faith in believing his children would not serve as an impediment to the sale. Even if we were to find Dr. Coe breached the agreement, which we do not find, we could not characterize his conduct as bad faith. By bad faith is not meant the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will. La.Civ.Code art. 1934(1). Such is not here the case.
We conclude the sale in this instance did not take place because of the actions of Mrs. Coe, not because Dr. Coe agreed to sell property in which he did not own a full interest. The latter consideration became irrelevant and had no bearing on the inexecution of the sale.
Appellant's second contention is that the court erred in awarding damages for the various repairs and for the moving expenses because there was insufficient proof at trial. We disagree but first address the basis for damages in this regard.
Even though the contract was rendered null and void as of April 1977, it was a viable agreement up until that time. As such, it gave rise to certain incidents which created obligations on the part of the respective parties. These incidents were not contemplated at the time of the agreement but later arose out of the plaintiffs' need to move from the residence they had sold, Dr. Coe's consent to let the plaintiffs move into the subject residence pending the Act of Sale,[4] and the protracted length of time used in attempts to perfect the title. Thus, from August 1976 until April 1977 the following things occurred which, under our law, may properly be termed incidents to the then existent contract to buy and sell:[5]
1. Plaintiffs made certain improvements to the property, including interior painting, electrical repairs and pool cleaning and repair.
2. Plaintiffs occupied the premises without the payment of any rental.
3. The property appreciated in value.
We are fortified in our belief that these are properly incidents of the purchase agreement by the express language of La.Civ. Code arts. 1963, et seq. These articles deal with the obligation to perform all that is *431 required by equity, usage, or law, as incidents to a contract.
Article 1964 provides:
"Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources."
Article 1965 provides:
"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another.[[6]] When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
It is obvious the plaintiffs and the defendant in this case were silent upon the residual obligations which might arise from the delays and from plaintiffs' occupancy of the home because, at the time, they did not expect a prolonged delay in closing the sale nor the ultimate failure of the agreement. The parties certainly did not intend to obligate each other but acted with the knowledge that should the occupancy result in monetary loss or gain, the principles of fairness and equity would obtain. We hold they do obtain, and afford the basis for adjudication of the monetary claims asserted for the items above listed.
The first item awarded by the trial court was $2,435.75 for materials and labor involved in painting the interior of the house. A stipulation was entered by the parties that if Mr. Dudley Broussard (a painting contractor) were called he would testify in accordance with an itemized list introduced as an exhibit. The list showed the price of labor and materials involved in painting 16,048 square feet was $2,435.75. Mrs. Williams testified virtually all rooms were painted except a bathroom. While the evidence concerning this expense is rather minimal, it is uncontradicted and we find no abuse of discretion in the trial court's award. We find sufficient evidence, in the form of testimony by Mr. and Mrs. Williams, to substantiate the other items of damages; i.e., the $200 for electrical repairs, $1,710 for pool cleaning, repairs and maintenance, and $200 for moving expenses.[7] We reject appellant's argument there should be no award for the pool expenses because these expenses were paid only for the enjoyment of the tenants. Testimony by Mrs. Williams indicated they replaced the pump and filter system for the pool as well as cleaned and maintained the pool during the months of occupancy. Dr. Coe would certainly be enriched unjustly if the pool had been repaired (and maintained for almost three years) at the Williams' expense. We decline to disturb these awards and hold they are recoverable as obligatory incidents of the contract to buy and sell.
Appellant's third argument is that the court erred in failing to award any sums to him for the fair rental value of the house. The court did so because it determined any amount due Dr. Coe for rental was offset by the amount due the Williamses as damages based on the appreciation of the house. We find the trial court did err as regards treatment of rental and appreciated value.
During the approximate nine months plaintiffs occupied the premises before the purchase agreement became null and void, the property, according to the unrefuted testimony of Mr. Russell Doiron, increased in value by $3,600.00. During this same period of time a fair rental value, according to Mr. Doiron, was $350.00 monthly for a total of $3,150.00. As incidents to the purchase *432 agreement (a contractual relationship involving only the plaintiffs and Dr. Coe), these are proper items for recovery. Aside from the codal basis (La.Civ.Code arts. 1963, et seq.) for the award of rental value, our jurisprudence has long recognized the equitable principle that where the purchaser has gone into possession, the seller is entitled to recover the fair rental value of the premises. Thompson v. Bullock, 236 So.2d 892 (La.App. 3d Cir. 1970). And, with respect to the item of appreciated value, this is no less a loss to the plaintiffs than the expenditures for repairs. For these nine months the plaintiffs were led to believe the sale would be consummated and at the end of that time, the market value of the same or a comparable house had risen by $3,600.00. This represents an economic loss which is incidental to the execution of the purchase agreement. If plaintiffs had not been contractually bound they could have earlier availed themselves of a more favorable market.
Turning to the claims for the additional rental and appreciated value which accrued after April 1977, these items must be treated differently.
Plaintiffs contend defendant is entitled, at most, to only one-half of the rental value since he was owner of only a one-half interest. We have already concluded that as to the rental value accruing before the contract became null and void, the defendant is entitled to the entire sum as an incident of the purchase agreement of which his children were not signatory. And, if we were to award him only one-half of that sum due to the split ownership, equity would require us to reduce by one-half the award to the plaintiffs for the improvements they made to the premises.
However, when we consider the rental value which accrued for the remaining twenty-six months of plaintiffs' occupancy, it is obvious a different basis for recovery is involved. No longer is there a contract from which an incidental obligation arises. This subsequent obligation arises because plaintiffs were "unjustly enriched" at the owners' expense by occupying the premises without any rent payment for the ensuing twenty-six months. Blair v. Diaz, 342 So.2d 1237 (La.App. 4th Cir. 1977); Thompson v. Bullock, supra. See also, Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). As co-owners, Dr. Coe's children were deprived of their share of the rental value. It is true they did not make a claim but, nonetheless, plaintiffs urge the defendants' lack of interest in pursuing recovery of the entire rental value. Although plaintiffs have not formally filed the peremptory exception raising the objection of no right of action, or interest in Dr. Coe to sue for more than one-half of this rental item, on our own motion we notice this defect. La. Code Civ.P. art. 927. Accordingly, we reject defendant's reconventional demand for one-half of the rental value which accrued after April 1977. The total amount which accrued is $10,800.00 which includes three months at $350.00, twelve months at $400.00, and eleven months at $450.00.[8] One-half of this sum, to-wit, $5,400.00 is due Dr. Coe.
Plaintiffs contend the property, over the entire period of thirty-five months, appreciated in value to the extent of $15,100.00, not the sum of $12,850.00 as testified to by Mr. Doiron. Not only are we satisfied with the validity of Mr. Doiron's estimate, this contention loses its relevancy because plaintiffs are not entitled to any loss represented by appreciated value accruing after April 1977 when the purchase agreement became null and void. During this latter period of time, the plaintiffs' status in occupying the premises was that of a tenant. They were no longer parties to a purchase agreement as it had ceased to exist (became null and void). As tenants, there could be no claim for appreciated value and they lacked a contractual basis upon which to claim damages. Once the contract became a nullity under its own terms because of the inability *433 of Dr. Coe to make the title merchantable within a reasonable length of time, other language in the contract relative to damages becomes meaningless.
Finally, we reject plaintiffs' claim that they are entitled to damages for their mental anguish. This likewise falls with the resultant nullity of the contract even if there were otherwise a basis in law for the award, which we do not find under the facts and circumstances of this case. We also reject plaintiffs' entitlement to attorney fees. These were provided for in the purchase agreement and since we have determined the contract became null and void, the contractual basis for the award of attorney fees ceased to exist. See, Starmount # 1 v. Klein, 396 So.2d 397 (La.App. 1st Cir. 1981); Simmons v. Hernandez, 287 So.2d 637 (La.App. 3d Cir. 1973), writ refused 1974.
In accordance with this opinion we conclude appellant, Dr. Relvert Coe, is entitled to the entire rental value of the property for a period of nine months ($3,150.00), and for one-half of the rental value of the property for the remaining period of twenty-six months ($5,400.00), a total of $8,550.00. The plaintiffs, David R. Williams and Marie T. Williams, are entitled to the value of the improvements and repairs to the property, and to the moving expense ($4,545.75); and are entitled to the increase in value of the property during the period prior to April 1977 ($3,600.00); a total of $8,145.75. These figures offset each other to the extent that Dr. Coe is entitled to a net award of $404.25.
Accordingly, we reverse the judgment of the trial court insofar as it decreed an award in favor of plaintiffs, David R. Williams and Marie T. Williams, and against defendant, Dr. Relvert Coe, and cast the defendant for all costs of the proceedings. We affirm that portion of the judgment fixing the expert witness fee of J. Russell Doiron and taxing it as costs.
We now render judgment on the reconventional demand in favor of plaintiff in reconvention, Dr. Relvert Coe, and against defendant in reconvention, David R. Williams, for the sum of $404.25, together with legal interest thereon from date of judicial demand until paid. In all other respects, the reconventional demand is dismissed.[9]
Costs of court are to be paid one-half by appellant and one-half by appellees.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
NOTES
[1] Eric Harry Coe, Deborah Jean Coe, Alan Jason Coe and Tracy Ann Coe.
[2] The writ of attachment was issued to vest the Louisiana court with jurisdiction over Dr. Coe (then a nonresident), in order to enforce an alimony judgment. The writ of fi. fa. was issued in connection with a judgment for past due alimony.
[3] The court apparently accepted Mr. Russell Doiron's opinion that Dr. Coe was entitled to $14,250 in rent for the 35 months plaintiffs occupied the home. Mr. Doiron also testified the house increased in value approximately $12,850 during this period.
[4] The evidence establishes that at the time plaintiffs moved into the house they already had knowledge of Dr. Coe's need to obtain powers of attorney to deal with his children's proprietary interest.
[5] In theory, it matters not whether we relate the itemized incidents to the purchase agreement or to what might be termed a subsequent verbal agreement to allow plaintiffs to move into the house pending the Act of Sale. The result would seem to be the same.
[6] Cf. La.Civ.Code arts. 2292, et seq., particularly arts. 2295 and 2299. The underlying theory of unjust enrichment derived from quasi contracts, absent another remedy at law, would seem to afford another basis for the treatment of the claims herein.
[7] Although the expense for moving from the premises occurred long after termination of the purchase agreement, it is an incident of the contract since the consented occupancy during the life of the contract gave rise to this otherwise unneeded expenditure.
[8] This amount, together with the $3,150.00 previously accruing, totals $13,950.00. This does not agree with the total of $14,250.00 arrived at by Mr. Doiron. We deem Mr. Doiron's computation to be in error.
[9] We find no merit in Dr. Coe's claim for $5,000 representing repairs to the premises made necessary by deterioration during plaintiffs' occupancy. Also, we reject that portion of Dr. Coe's claim for rental value not hereinabove awarded.