JjDOUCET, Judge.
This is an appeal from a judgment finding the defendant liable to the plaintiffs for a breach of contract.[1]
The facts leading to this appeal are essentially undisputed. Plaintiffs, AAA Brick Company, Inc. (AAA Brick), and its president, Lester Tisdale, purchased land in Lafayette Parish near Carenero in order to construct low-income housing. The development included extending the existing Mar-kridge Park Subdivision. Construction was to be achieved in five stages. The first two stages were known as Markridge Park Subdivision Extension 1 — Phase I and Extension 1 — Phase II. Extensions 2, 3, and 4 constituted the remainder of the plan of development. |2In 1977, plaintiffs began negotiating with the defendant, the City of Carenero (City), for the purpose of acquiring water and sewerage services from the City for plaintiffs’ development. By way of correspondence entered into the record and testimony of the witnesses, the record shows the parties entered into a series of agreements. These agreements essentially provided that if AAA Brick complied with all the City’s requirements, the City would annex the subdivisions and provide the utility services. Extension 1 — Phase 1 and Extension 1 — Phase II subdivisions were annexed and the services were provided. However, the City refused to annex and provide services to the third subdivision, Extension 2.
Plaintiffs filed suit on February 25, 1987, seeking damages for an alleged breach of contract against the City, among others. At trial, only the City remained as a defendant. By joint motion, both parties moved to bifurcate trial on the issues of liability and dam *484 ages. The motion was granted and a trial on the issue of liability was held from April 28, 1992 through April 30, 1992. In his oral reasons for judgment, the trial judge correctly articulated the issues and made numerous findings of fact as follows:
The Court will make the following findings and rulings in this matter:
The Court will find that all of the parties to this lawsuit are found, after listening to the testimony and considering the evidence introduced, to agree that if the Plaintiff complied with all of the requirements of the Town, that the Town would annex the subdivision of the plaintiff, being identify hereinafter as Extension 2; and by doing so the City would then accept the streets and the water and sewer lines and maintain them in perpetuity.
jjThe issues in this case are whether one of the requirements imposed upon the Plaintiff was that there be only single family dwellings constructed in the subdivision and what is the effect, if any, that the subdivision was not formally annexed into the Town.
The Court finds that there never was any written or oral requirement by the Town that the single family dwelling condition was made a condition or requirement in this case. The Town, through its mayor and members of the counsel, merely assumed that Extension No. 2 would bé the same as the previous development of Mar-kridge Park Subdivision in which only single family dwellings had been constructed, but there is no evidence that this requirement was ever discussed, nor that Mr. Tisdale nor any of his representatives ever made such a representation that they would do this, or that they were aware that this was a requirement. In fact, this matter was never brought up until at a meeting of the Town Counsel on March 3rd, 1980, when some residents presented complaints concerning the possibility or the foreseeability of the consideration of duplex apartments. By that time the Plaintiff had complied with all of the requirements and relied upon the Town’s representations of approval that it would annex its property into the Town and that the Town would assume its obligations.
The Court further finds that by letter of November 24th, 1978 from the Lafayette Regional Planning Commission to the Town of Carenero, they were in essence asked to give to the Planning 14Commission any additional requirements that they wished to impose in connection with the plaintiffs request to have his property annexed into the City; that the Town did not specify any additional conditions and definitely did not make as a condition that there be only single family dwellings. The Town was operating under the assumption that the general requirements used by the City of Lafayette were the requirements that they would require.
The Court does find, however, that it was understood that Extension 2 must be annexed into the corporate limits of the Town in order for the agreement to be complete, and that no petition was ever presented by the Plaintiff because of the mayor’s letter of December 20th, 1979 and the expression to the Plaintiff in that letter that approval to annex had already been given, and further, because the Town changed its mind about annexation at its March 3, 1980 meeting. At the time that the Town changed its mind, the Plaintiff by stipulation was the record owner of all of the lots in Extension No. 2, and the owner in fact of one-half or more in number and value of the lots therein, and annexation by a petition would have been simply a formality. The Court also finds as having been proven by testimony from the mayor and Counsel members that annexation, once all of the requires [sic] were complied with, was simply a formality.
The Court further finds that although there was no formal resolution to annex ever passed by the Counsel, their intention to agree to annex was made express at the November 3rd | sand/or December 3rd, 1979 Counsel meetings, and definitely by the letter of Mayor Angelle dated December 20th, 1979, in which this intent was expressly stated. Furthermore, the same intent was stated in a letter from the may- or to the Farmer’s Home Administration and made part of the record.
*485 The Court further notes that on two subsequent occasions the Town incorporated areas without ever making a requirement that there be single family dwellings, and that as of today there does not exist a zoning ordinance within the Town of Car-enero which would prevent anyone within the limits of the Town from braiding duplex apartments if they chose to do so. So it would appear to the Court that there was no actual basis of any kind to make such requirement, other than complying with the complaints raised by certain citizens at the March 3rd, 1980 meeting.
The Court will further find that under Louisiana Revised Statute 33:4162 and 4163 that the law recognizes the right of a municipality to provide utility services outside of the corporate limits.
As a result of these findings, the trial court found the plaintiffs and the defendant entered into a contract and that the City breached the contract.
Defendant appeals alleging the trial court erred in finding defendant breached a contract with the plaintiffs. Plaintiffs answered the appeal and alleged the trial court erred |sin not finding the defendant was in bad faith in breaching the contract.
Defendant admits the City agreed to provide services to the plaintiffs. The City, however, argues that the agreement was sus-pensively conditioned upon the subdivision being annexed into the corporate limits of the City. It asserts that annexation of the property is completely within its discretion and at its whim, making the obligation a nullity under La.C.C. art. 1770.
We find that annexation was not a condition precedent to the fulfillment of the contract. Rather, it was an object of the contract. Litvinoff explains in his treatise what constitutes a condition of a contract. 5 La.Civ. Law Treat. (Litvinoff) § 5.6. A reading of this makes it clear we are not dealing with a suspensive condition since the evidence contains no implication that annexation was a matter of will or whim. Rather, it was the thing for which the plaintiffs bargained. The evidence shows the City communicated it would annex the plaintiffs’ property if the plaintiffs fulfilled all the conditions for annexation. The evidence further shows the requirements were fulfilled. The City then failed to annex the subdivision. Thus, we find the trial court did not err in finding that the defendant breached the contract.
Plaintiffs argue the defendant was in bad faith in breaching the contract.
Plaintiffs have the burden of proving any damage suffered by them as a result of a breach of contract. Decuir v. Sam Broussard, Inc., 459 So.2d 1375 (La.App. 3 Cir.1984); Campbell v. Lelong Trust, 327 So.2d 533 (La.App. 2 Cir.), writ denied, 331 So.2d 494, 496 (La.1976). On the issue of bad faith, the court in Williams v. Coe, 417 So.2d 426, 430 (La.App. 1 Cir.1982) stated:
_j7_By bad faith is not meant the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will. La.Civ. Code art. 1934(1).[2]
After reviewing the record, we cannot say the plaintiffs carried their burden of proving bad faith on the part of the defendant.
For the foregoing reasons, the judgment of the trial court is affirmed and this matter is remanded to the trial court for further proceeding consistent with the views expressed. Costs are to be paid one-half by appellant and one-half by appellees.
AFFIRMED.

. The trial of this matter was conducted only on the issue of liability.

. This article has been revised. The substance has not been changed and has been reproduced in La.C.C. art. 1966 and La.C.C. art. 1967.