JgWHIPPLE, Judge.
This case is before us on appeal from a judgment in favor of Rabenhorst Funeral Home, Inc. (Rabenhorst), and against Patrick L. Tessier on Rabenhorst’s main demand; and in favor of Patrick L. Tessier and against Rabenhorst Life Insurance Company (Ra-benhorst Life), on Tessier’s third party demand. From this judgment, defendant appeals, and plaintiff and third party defendant answered the appeal. We affirm in part, reverse in part and remand.
FACTS AND PROCEDURAL HISTORY[1]
Melva Ligón Tessier died on February 16, 1993. At the time of her death, she was designated as an “insured” on a “burial contract” issued by Mortuary Benefits Association, Inc. of Baton Rouge, Louisiana (Mortuary Benefits), now Rabenhorst Life, its successor.
Tessier and his siblings went to the office of Rabenhorst to make arrangements for the burial of their mother. Tessier executed a funeral service contract, entitled “Statement of Funeral Goods and Services Selected.” This statement shows that one of the items selected by Tessier was an oak casket. After the selections were made, Tessier informed David Ducote, a funeral director employed by Rabenhorst, that his mother had a burial contract with Mortuary Benefits. Mr. Du-cote informed Tessier that the policy had a cash value of $235.00, and that a credit in this amount would be applied to the goods and services selected. Tessier was not satisfied with the amount of the credit offered under the policy and spoke to Mr. Scott Raben-horst, the vice-president and agency ^director of Rabenhorst Life. Tessier requested an increase in the amount of the credit; however, Mr. Rabenhorst stated that $235.00 was the maximum benefit allowed under the policy.
Subsequently, Rabenhorst provided the goods and services selected by Tessier for his mother’s burial. At some point thereafter, Rabenhorst made demand upon Tessier for payment due. In accordance with the funeral service agreement executed by Tessier, Rabenhorst sought to collect $5,306.80 as the cost of the burial goods and services provided. Tessier refused to pay the amount claimed due. By letter dated November 11, 1993, Tessier tendered $2,821.80, representing the amount he estimated as due, after deducting from the total costs the value of *1166 the funeral services he believed were covered by the burial contract. Rabenhorst refused to accept the amount tendered and returned Tessier’s check.
On January 5, 1994, Rabenhorst filed suit against Tessier to collect the amount allegedly owed under the terms of the funeral service contract. Tessier answered and filed a reconventional demand against Rabenhorst and a third party demand against Raben-horst Life seeking damages due to fraud and duress, and a third party demand against Rabenhorst Life seeking reimbursement of ambulance expenses owed under the “burial contract.” Tessier also sought specific performance of the terms of the “burial contract.”
Following trial, which was held on September 8, 1994, judgment was rendered in favor of Rabenhorst, and against Tessier, in the amount of $6,382.40 on Rabenhorst’s main demand. Judgment was also rendered in favor of Tessier, and against Rabenhorst Life, in the amount of $1,578.30 on Tessier’s third party |4demand. Tessier appealed, and Rabenhorst and Rabenhorst Life answered the appeal.
TESSIER’S ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, Tes-sier contends that the trial court erred in concluding: (1) that the contract clearly and unambiguously provided for forfeiture of all goods and services specified in the contract upon selection of an alternate casket, rather than the casket specifically outlined in the contract; and (2) that in the event of such an alternative selection, the only benefit afforded under the contract was a credit in the amount of $235.00. We agree.
Legal agreements have the effect of law between the parties, and courts are bound to give legal effect to all such contracts according to the true intent of the parties. Sullivan v. State, Department of Transportation and Development, 623 So.2d 28, 30 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La.1993). The parties’ intent is to be determined by the words of the contract when they are clear and explicit. Sullivan, 623 So.2d at 30. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 17 (La.App. 1st Cir. 3/11/94), 634 So.2d 466, 479, writ denied, 94-0906 (La. 6/17/94), 638 So.2d 1094. However, where the terms of the agreement are unclear, ambiguous or will lead to absurd consequences, the court may go beyond the original agreement to determine the true intent of the parties. Sullivan, 623 So.2d at 30. Whether a contract is ambiguous is a question of law; and ambiguity in a contract of insurance is to be construed in favor of the insured. Nickels v. Guarantee Trust Life Insurance Company, 563 So.2d 924, 926 (La.App. 1st Cir.1990). The threshold issue is whether the provisions of the burial contract herein are clear and unambiguous. The trial court, relying on Galjour v. Security Industrial Insurance Co., 618 So.2d 516 (La.App. 4th Cir.1993), concluded that the conditions of the “burial contract” clearly and unambiguously prohibited Tessier from substituting an oak casket for the cypress casket provided for in the contract and still availing himself of the other funeral services (or the value thereof) outlined in the contract. We disagree, finding that the language of the contract herein differs from the policies involved in Galjour.
In Galjour, a beneficiary under three funeral insurance policies filed suit seeking damages because the insurer refused to permit a substitution for the “contract casket” provided for in the policies. .The appellate court concluded that the funeral insurance policies therein clearly and unambiguously precluded the beneficiary from substituting a more expensive casket for the policy casket and still availing himself of the other funeral services provided. After reviewing the policies in question, the Galjour court concluded that the policies clearly provided three options: (1) the funeral provided by the policy, which included everything necessary for a basic funeral; (2) an allowance on any other merchandise selected in the amount of the funeral benefit provided; or (3) a cash payment equal to the funeral benefit. Galjour, 618 So.2d at 518.
The burial contract at issue herein provided that Mortuary Benefits would “furnish *1167 and conduct at the time of the death of the insured, ... ail funeral benefits provided under the Conditions of said Association,” for a premium of $1.00 per month. The relevant “Conditions” provide:
4. At the time of the death of the insured adults whose names appear on the Policy and [upon] evidence to the fact that said insured is in good standing, benefits will be |6furnished, the equivalent to one hundred ninety two and 50/100 Dollars ($192.50), which shall include the following; delivered within a radius of 65 miles of Baton Rouge, Louisiana.
Embossed cloth covered casket and outside ease, both made of cypress, embalming, funeral coach, three passenger cars, arrangement and transportation of flowers, conducting of funeral, inserting notices in newspapers, obtaining certificates and burial permits, complete cemetery equipment, chairs, use of funeral home, floral acknowledgment cards, and monument or grave marker of Marble. (These benefits do not include cemetery fees, vaults, burial garments, etc.)
[[Image here]]
10. The person or persons insured in this policy, have the option at the end of ten years from date of this policy, of exchanging the policy for a credit certificate to the amount of $125.00 which will be accepted as cash on the funeral service of any one insured in this policy, by the Association’s authorized funeral director.
Unlike the trial court, we cannot conclude that the contract clearly and unambiguously prohibits a substitution; nor do we find that the contract allows only a credit pursuant to condition 10 in the event a substitution is made. After carefully reviewing the contract in its entirety, we find no language in the contract stating that the benefit provided under condition 4 is forfeited upon any substitution of goods or services. Thus, we find that the trial court erred, as a matter of law, in concluding: (1) that the contract clearly and unambiguously prohibited substitutions; and (2) that Tessier therefore was only entitled to the credit certificate amount addressed in condition 10.
After careful review of the contract between the parties, we find that the agreement does not address and therefore does not prohibit the ramifications of the substitutions made or requested by either party. The contract is silent as to the amount of credit or other goods to be substituted in the event the specific goods or |7services outlined in condition 4 could not be provided. For example, there is nothing in the language of the contract allowing or prohibiting a substitution, or even delineating the parties’ respective obligations where, as here, the funeral home could not provide a cypress casket as described in the 1934 contract.
Accordingly, contrary to the trial court’s conclusions, we find that the contract was ambiguous and unclear. Applying contract principles to the facts before us, we find that the agreement is unclear and ambiguous with respect to substitution of goods and valuation thereof; thus, we must go beyond the original agreement in an attempt to determine the true intent of the parties. Sullivan, 623 So.2d at 30. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art. 2053. However, in case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. LSA-C.C. art. 2056; Spohrer v. Spohrer, 610 So.2d 849, 853 (La.App. 1st Cir.1992).
In this case, the original insureds and signatories to the contract are deceased. Moreover, there is nothing in the record to establish what representations were made by Mortuary Benefits regarding the right to substitute under the policy when the agreement was entered into in 1934. Accordingly, we must construe the contract in Tessier’s favor and conclude that the parties did not intend that Melva Tessier’s heirs would suffer a complete forfeiture of the value of goods and services upon substitution under condition 4 of the policy. Indeed, as the trial court found, even though condition 4 specified a casket and outside boxjgmade of cypress, it is undisputed that Rabenhorst could not have provided a casket or outside box made of cypress, as “[a] cypress casket, as *1168 outlined in the policy, could have been specifically constructed although the same was not available as a stock item from casket manufacturers in 1995.” Moreover, the trial court found that “Rabenhorst Life Insurance Co.[,] would not have provided a marble head marker as outlined in the policy because of the prohibited [sic] cost in 1995.” Thus, it is clear that for economic (cost of marble now prohibitive) or other reasons (cypress no longer readily available) Rabenhorst and Ra-benhorst Life intended to make certain substitutions for unavailable goods in satisfaction of the benefits owed defendant under the terms of the contract.
Because we find that substitutions are allowed under the contract, without forfeiture of the goods and services set forth in condition 4, we must conclude that Tessier was entitled to a credit for the present value of the goods and services outlined therein, less the difference in price between the cypress casket not readily available but specified in the contract and the oak casket chosen and supplied. However, we cannot ascertain from the record before us the value of those goods and services or the difference in price between the cypress casket and the oak casket. Given the deficiencies of this record, and in the interest of justice, we remand the case to the lower court for a calculation of these amounts in accordance with our decision herein.[2]
laTESSIER’S ASSIGNMENT OF ERROR NUMBER FOUR
Tessier also contends on appeal that he is entitled to damages because representatives of Rabenhorst and Rabenhorst Life acted in bad faith in discharging their obligations under the contract. We disagree.
Contracts must be performed in good faith. LSA-C.C. art. 1983. An obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of the failure to perform. LSA-C.C. art. 1997. Tessier contends that he is entitled to damages based on plaintiffs’ failure to advise him of his rights under the contract after the issue of coverage had been raised. Thus, the threshold issue to be determined is whether representatives of Rabenhorst and/or Rabenhorst Life acted in bad faith.
Bad faith is not the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will. Williams v. Coe, 417 So.2d 426, 430 (La.App. 1st Cir.1982), Ra-benhorst’s funeral director, David Ducote, met with Tessier to make the funeral arrangements for Tessier’s mother. After the selection of certain goods, including the oak casket, Tessier presented the burial policy to Ducote. Ducote informed Tessier that the cash value of the policy was $235.00, which could be applied to the goods and services selected. Tessier was displeased with the amount of the credit and met with Scott Rabenhorst, the vice-president and agency director of Rabenhorst Life.[3] Tessier requested an increase in the cash value, but Mr. Rabenhorst refused to alter the amount credited. The funeral arrangements then proceeded.
lioBased on our review of these facts, we cannot conclude that the representatives acted in bad faith. At the time of the negotiations, the plaintiffs representatives construed the contract to mean that Tessier was restricted to the minimal amount specified as a credit under condition 10 once Tessier selected a more costly package than the goods and services specifically outlined in condition 4. There is no evidence that this interpretation of the contract was in bad faith. Further, there is nothing in the record before us to show that the representatives were attempting to conceal anything from Tessier. We find it reasonable that the representatives assumed Tessier was aware of their interpretation of the contract and found it unnecessary to offer any further explanation, especially since Tessier’s brother, Jack Tessier, was present at the time the arrangements *1169 were being made and was a former employee of Rabenhorst Life.
Considering the above and foregoing, we find that Tessier failed to prove that anyone acted in bad faith and therefore is not enti-tied to damages. This assignment of error is “ & wi ou men .
ANSWER TO APPEAL
In their answer to the appeal, Raben-horst and Rabenhorst Life contend that the trial court erred in awarding Tessier $1,348.30 for ambulance services allegedly provided by the contract. We disagree.
In pertinent part, the contract provided that “[a]mbulance service will be rendered without charge to any member of this Association within a radius of 15 miles of Baton Rouge, La.” The trial court noted that “[njeither Rabenhorst Life Insurance Co.[,] nor Rabenhorst Funeral Home, Inc.[,] provides ambulance services through company owed ambulances, an earlier practice of the funeral | nhome,” and “[ajmbulance service is now provided through reimbursement of ambulance invoices submitted ... to Raben-horst Life Insurance Co.” Despite the fact that the companies do not independently provide ambulance services, as they did in 1934 when the contract was executed, the contract nonetheless clearly provides that ambulance services will be rendered without charge.
Rabenhorst’s contention that Mrs. Tessier’s only out-of-pocket expense was her Aca-dian Ambulance Service membership fee is not supported by the record. The ambulance bills indicate that payments on the invoices were made by private insurance, by Blue Cross and by Medicare. Thus, it is apparent that Mrs. Tessier’s expense for this service was not limited to the membership fee. Enforcement of the contract as suggested by Rabenhorst and Rabenhorst Life would be utterly inconsistent with the provision stating that the services would be rendered without charge.
Also, as noted by the trial court, “[tjhere is no limitation on the ambulance coverage other than a mileage limit.” Because the contract does not contain any other limiting language, and does not provide that coverage is restricted to actual out-of-pocket expenses, we find no error in the trial court’s award for ambulance services.
This assignment of error is without merit,
CONCLUSION
-c ,, u . „ ,, For the above and foregoing reasons, the judgment of the trial court, in favor of Ra-benhorst Funeral Home, Inc., and against Patrick L- Tessier’ on the demand of Rabenhorst Funeral Home, Inc., is affirmed, Insofar as the judgment is in favor of Patrick L. Tessier on his third party demand against | Rabenhorst Life Insurance Company, in the amount of $1,343.30, for the ambulance expenses covered by the burial contract, the judgment is affirmed. However, the judgment is reversed insofar as it is in favor of Rabenhorst Life Insurance Company, on Tessier’s third party demand to enforce the burial contract. The matter is remanded to the trial court for further proceedings consistent with the views expressed herein.
All costs are assessed against Rabenhorst Life Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
LeBLANC, J., dissents for the reasons assigned by trial court.

. The trial judge herein issued findings of fact on February 17, 1995, pursuant to LSA-C.C.P. art. 2131 because the testimony adduced at trial had not been properly recorded. At oral argument, the parties acknowledged that LSA-C.C.P. art. 2161 authorizes a remand of the case under the circumstances. However, counsel for all parties requested that this court decide the merits of the case based on the trial court’s findings of fact instead of remanding the matter.

. Tessier is entitled to the value of benefits provided in condition 4 of the burial contract, despite the fact that he chose a potentially more expensive casket than the one specified in the contract. However, we find no basis in the record or the contract to support Tessier’s contention that he is now entitled to specific performance, i.e. delivery of a cypress casket.

. Scott Rabenhorst is also the vice-president of the Rabenhorst Funeral Home.