PARRO, J.
 

 |2The plaintiff appeals a judgment sustaining an exception raising the objection of prescription in favor of two defendants and denying its motion for a preliminary injunction relative to an alleged servitude of passage.
 

 Factual Background and Procedural History
 

 In 1988, Roba, Inc. (Roba) purchased a 12-acre tract of land from James Courtney, II and his wife.
 
 [1]
 
 To the east of the 12-acre tract of land, and adjacent thereto, was a 49.9678-acre tract that had been purchased by Robert L. Lucien
 
 [2]
 
 from the
 
 *511
 
 Courtneys in 1987 that fronted on Highway 1047. In connection with the sale of the 12-acre tract, a document entitled “Agreement for Right of Way” (the 1988 agreement) was executed on an unspecified day in May 1988 by the Courtneys only, even though Roba was a named party to the document.
 
 [3]
 
 In that document, it was declared that:
 

 they will establish the Right of Way from the “lake” property to Louisiana Highway 1047 on the North side of the Roba, Inc. property not to be included in the Roba, Inc. property. The Courtneys agree that the Right of Way will be created on the property they own on the North side of the Roba, Inc. property [the legal description of which was provided] ....
 

 This document was recorded on the same day as the deed, May 18, 1988, in conveyance book number 176, page 674, instrument number 062686, in the official records of the parish of St. Helena.
 

 In 1992, Roba purchased a 51.3449-acre tract of land from the Courtneys. That tract included a lake and borders Roba’s 12-acre tract to the west and the south. The 1992 cash deed does not refer to any right-of-way associated with the sale.
 
 [4]
 
 Neither the 1988 nor the 1992 deeds reflected that those tracts were burdened by a servitude.
 

 On April 30, 1998, Roba filed suit against the Courtneys for specific performance, seeking to enforce the 1988 agreement and its provision allegedly requiring the | ¡¡establishment of a right-of-way. On November 2, 1998, Roba supplemented and amended its petition to add as defendants Mitchell R. Radecker and his wife, who had purchased from the Courtneys on July 28, 1998, a 12.87-acre tract bordering Roba’s property to the north that was allegedly subject to the proposed east/west right-of-way to be established pursuant to the 1988 agreement. Roba alleged that a plat of survey attached to the Radeckers’ deed disclosed that a portion of the tract was burdened with a right-of-way of an undetermined size along the south property line in favor of Roba and Mr. Lucien. A default judgment was confirmed on June 2,1999, against the Radeckers, recognizing a 30-foot-wide right-of-way along the southern boundary line of their 12.87-acre tract as shown in a June 2, 1998 survey by Robert G. Barrilleaux & Associates, Inc. registered in conveyance book 222, page 177 in the official records of St. Helena Parish.
 
 [5]
 

 Pursuant to an August 24, 2001 deed, Tony L. Noto, Jr. and his wife bought two tracts of land from Mr. Courtney.
 
 [6]
 
 Those tracts bordered the northern side of Mr. Lucien’s property. In the 2001 deed, the Notos acknowledged that this property was burdened by a servitude described in an agreement recorded in conveyance book 170, page 638 of the official records of St. Helena Parish.
 

 On December 22, 2004, the Radeckers sold their 12.87-acre tract to William J. and Lori B. Hall, who were the owners of an adjacent 10.5-acre tract to the north.
 
 [7]
 
 
 *512
 
 In connection with the 2004 sale, a title examination was performed by the same attorney who rendered a title opinion in connection with the 1992 sale to Roba. The 2004 opinion indicated that the Radeckers’ title was subject, in pertinent part, to the following:
 

 3) Right of way granted to owners of “Lake Property” from Louisiana State Highway to “Lake” as reserved in that sale and partition agreement between [Mr. Courtney, his mother, and his siblings] and duly recorded at Conveyance Book 87, Page 88 in the records of the St. Helena Parish Clerk of Court. February 13, 1974
 

 |44) Right of way granted by [the Court-neys] across property to North of ROBA, Inc. and in favor of ROBA, Inc. from “Lake Property” to Louisiana Highway 1047 dated May, 1988 and duly recorded at Conveyance Book 176, Page 674.
 

 5) Reaffirmation of right of way for owners of “Lake Property” as contained in that judgment of possession for the
 
 Succession of Virgie May Durnin Courtney
 
 and being duly recorded at Conveyance Book 195, Page 325 in the records of the St. Helena Parish Clerk of Court. January 23, 1992
 

 6) Reaffirmation of right of way for owners of “Lake Property” as contained in an act of sale from [Mr. Courtney’s sister] to [Mr. Courtney] dated January 22, 1992 and recorded at Conveyance Book 195, page 341 in the records of the St. Helena Parish Clerk of court. February 25, 1992
 

 7) Reaffirmation of right of way for owners of “Lake Property” as contained in that deed from [Mr. Courtney’s brother] to [Mr. Courtney] dated January 22, 1992 and recorded at Conveyance Book 195, page 343 in the records of the ,St. Helena Parish Clerk of court. February 25, 1992
 

 [[Image here]]
 

 10) Apparent but unrecorded rights of way for passage, utilities and drainage.
 

 11) The map and survey of the 12.87 acre tract of property belonging to [the Radeckers] and recorded at Conveyance Book 222, Page 177 indicates that there is a shed located on the hereinabove described tract of property that appears to be located within the right of way apparently established by ROBA, Inc. as set forth hereinabove.,
 

 12) There is noted on the map and survey of the 12.87 acre tract of property belonging to [the Radeckers] and recorded at Conveyance Book 222, Page 177 a private gravel road that may indicate a servitude of passage to and from the property. (Lake Property)
 

 On February 22, 2006, Roba filed a second supplemental and amending petition, adding the Notos as defendants. In that supplemental and amending petition, Roba asserted for the first time a claim for damages and attorney fees against all of the defendants. The Courtneys filed an exception raising the objection of prescription as to Roba’s claims for damages and attorney fees.
 

 On January 10, 2007, Roba supplemented and amended its petition a third time to add the Halls as defendants and to assert a claim against the Courtneys, the Radeck-
 
 *513
 
 ers, the Notos, and the Halls seeking to enforce its alleged right-of-use/predial | -,servitude dating back to 1974, which provided access to Idle Acres Lane. Roba urged that a north/south right-of-way to Idle Acres Lane allegedly provided ingress and egress to the lake property from Highway 1047. Roba alleged that it had used that servitude up to the property line only and that the placement of a fence had denied it access to the rest of the servitude. Roba averred that although the north/south right-of-way was not reflected in either of its deeds, the right-of-way was mentioned in the 2004 conveyance from the Radeckers to the Halls.
 

 In their answers, the Notos and Radeck-ers urged that Roba’s claims for damages and attorney fees had prescribed. The Radeckers also questioned whether Roba had a cause of action against them since the property in question had been sold to the Halls. The Halls filed an exception urging the objection of no cause or no right of action based on the extinguishment of the servitude due to common ownership by Mr. Courtney of all of the tracts of land which formerly belonged to his parents. In their supporting memorandum, the Halls stated that following the death of Mr. Courtney’s father, the estate was partitioned and a right-of-way was given to family members for purposes of accessing the lake. Based on Mr. Courtney’s subsequent ownership of all the property, the Halls urged that the right-of-way to the lake was extinguished by confusion. As to the proposed right-of-way running from east to west, the Halls averred that Roba had a closer, more direct, and less inconvenient path to Highway 1047 via Roba’s and Mr. Lucien’s property. The Halls later filed an exception urging Roba’s failure to join a necessary party, the Lucien Family Trust,
 
 [8]
 
 needed for just adjudication of the matter.
 

 With respect to the Courtneys’ exception of prescription regarding the second supplemental and amending petition, following a hearing, the trial court sustained the Courtneys’ exception and dismissed Roba’s claim against them for damages and attorney fees. Additionally, after finding that Roba had the right as a landowner to seek a servitude of access and that Roba had stated a cause of action, the trial court overruled the exceptions filed by the Halls. Roba filed a motion for new trial with [firespect to the prescription issue, which was denied.
 
 [9]
 

 On August 31, 2007, Roba sought the issuance of a preliminary injunction to prevent the Halls from physically blocking the 1974 predial servitude that allegedly provided Roba with access to the public road. The Halls then filed an exception raising the objection of prescription relative to the claims asserted against them in Roba’s third supplemental and amending petition, contending that the alleged 1974 servitude providing access to Idle Acres Lane was extinguished by liberative prescription for nonuse for a period of 10 years or more.
 
 [10]
 
 After a hearing on the issue of nonuse for a period of more than 10 years, Roba’s motion for a preliminary injunction was denied, the Halls’ exception raising the objection of prescription regarding the third supplemental and amending petition was sustained, and Roba’s claims against the Halls in that
 
 *514
 
 petition were dismissed.
 
 [11]
 
 Roba appealed,
 
 [12]
 
 contending the trial court erred in 17sustaining the Halls’ exception and denying its motion for a preliminary injunction.
 

 Discussion
 

 Voluntary or conventional servitudes are established by juridical act, prescription, or destination of the owner. LSA-C.C. art. 654. Conventional servitudes, accordingly, may arise from bilateral or unilateral juridical acts.
 
 See
 
 LSA-C.C. art. 654, Revision Comments — 1977, comment (b).
 

 A predial servitude is a charge on a servient estate for the benefit of a dominant estate. LSA-C.C. art. 646.
 
 [13]
 
 The two estates must belong to different owners.
 
 Id.
 
 There must be a benefit to the dominant estate.
 
 [14]
 
 LSA-C.C. art. 647. There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate.
 
 Id.
 
 The owner of the servient estate is not required to do anything. LSA-C.C. art. 651. His obligation is to abstain from doing something on his estate or to permit something to be
 
 *515
 
 done on it. He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate.
 
 Id.
 

 Predial servitudes may be established by an owner on his estate or acquired for its benefit. The use and extent of such servitudes are regulated by the title by which they are created. LSA-C.C. art. 697. In the absence of such regulation, they are governed by the rules set forth in LSA-C.C. arts. 698 through 774.
 
 See
 
 LSA-C.C. art. 697. Predial servitudes are established on, or for the benefit of, distinct corporeal immovables. LSA-C.C. art. 698. A right of passage is an example of a predial servitude.
 
 See
 
 LSA-C.C. art. 699. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. LSA-C.C. art. 705. Affirmative servitudes are |sthose that give the right to the owner of the dominant estate to do a certain thing on the servient estate. Such are the servi-tudes of right of way, drain, and support. LSA-C.C. art. 706.
 

 The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply. LSA-C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. LSA-C.C. art. 722. A predial servitude may be established on a certain part of an estate, if that part is sufficiently described. LSA-C.C. art. 727. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. LSA-C.C. art. 730.
 

 A predial servitude, such as a servitude of passage, is preserved by the use made of it by anyone, even a stranger, so long as it is used as appertaining to the dominant estate. LSA-C.C. art. 757;
 
 Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership,
 
 01-2812 (La.App. 1st Cir.12/30/02), 839 So.2d 82, 94,
 
 writ denied,
 
 03-0306 (La.4/4/03), 840 So.2d 1219. The use of the language “so long as it is used as appertaining to the dominant estate” has been interpreted by this court as requiring that someone must use the servitude for the purpose of going onto the servient estate for some legitimate purpose, either to see the owner or for something connected with the use of the servient estate.
 
 See Latour v. Francis,
 
 417 So.2d 485, 489 (La.App. 1st Cir.),
 
 writ denied,
 
 420 So.2d 983 (La.1982).
 

 If a predial servitude is not used for ten years, it is extinguished. LSA-C.C. art. 753;
 
 Church v. Bell,
 
 00-0286 (La.App. 1st Cir.3/28/01), 790 So.2d 82, 84 n. 3,
 
 writ denied,
 
 01-1214 (La.6/15/01), 793 So.2d 1247. Prescription of nonuse for an affirmative servitude is measured from the date of its last use. LSA-C.C. art. 754;
 
 Palace Properties, L.L.C.,
 
 839 So.2d at 94. When the prescription of nonuse is pled, the owner of the dominant estate has the burden of proving that someone has made use of the servitude in the manner contemplated by the grant of the servitude and as appertaining to the dominant estate during the period of time required for the accrual of prescription, such that no consecutive ten-year period of nonuse occurred.
 
 See
 
 LSA-fcC.C. art. 764;
 
 Palace Properties, L.L.C.,
 
 839 So.2d at 94. A partial use of a servitude constitutes use of the whole. LSA-C.C. art. 759. Therefore, the use of a part of the area burdened with a predial servitude interrupts the prescription of nonuse as to the entire area. A.N. Yian-nopoulos,
 
 Predial Servitudes
 
 § 167 at 455,
 
 *516
 
 in 4
 
 Louisiana Civil Law Treatise
 
 (3rd ed.2004).
 

 After reviewing this law and considering applicable jurisprudence, the trial court stated:
 

 And I find that the cause of action alleged in the plaintiffs Third Supplemental and Amending Petition based on the 1974 partition has prescribed. The servitude elapsed for a period of non-use for over ten years. The partition with the servitude between the family property, the Courtney property was in 1974. And then in 1988 and 1992 I think the Lucien and Roba properties were bought.And then in 2006 Mr. Lucien on behalf of Roba found out about the servitude, the long continuous servitude from the road to the lake; which the continuous servitude had never been used. I heard testimony that Mr. Hall used it on his side and maybe Radeckers used it on their side to get to the catch pen fence. And
 
 then
 
 Mr. Lucien on his own behalf, on behalf of Roba used it on his side to get to the catch pen fence, but that it had never been used for the purpose it was set up for from the lake to the road. I don’t find the plaintiffs carried their burden of proof based on these reasons.
 

 Notably, the record in this case is devoid of the acts, deeds, and/or judgment relied on by Roba to show the creation and continued existence of the 1974 predial servitude. Instead, Roba simply relied on statements made by the attorney in the 2004 title opinion which referenced many of those documents. Title opinions are not evidence of title.
 
 See Norton v. Thorne,
 
 446 So.2d 972, 974 (La.App. 3rd Cir.1984). Accordingly, we recognize that the documents in the record are not evi dence of title to the servitude of passage in question.
 

 Furthermore, from the record, there is no way to tell when the property was commonly owned by ■ the Courtneys. Therefore, it is impossible to determine whether the 1974 servitude was extinguished by confusion.
 
 See
 
 LSA-C.C. art. 765.
 

 Nonetheless, the 1974 servitude that Roba seeks to enforce was seemingly created by title, which would have regulated the use and extent of such servitude. In the memorandum in support of their exception urging the objection of no cause or no right of action, the Halls admitted that following the death of Mr. Courtney’s father, the estate was partitioned and a right-of-way was given to family members for purposes of | inaccessing the lake. This allegedly occurred in 1974.
 

 As to the 1974 servitude of passage, the Halls have pied the prescription of nonuse; therefore, Roba as the owner of the alleged dominant estate had the burden of proving that someone has made use of the servitude in the manner contemplated by the grant of the servitude and as appertaining to the dominant estate during the period of time required for the accrual of prescription, such that no consecutive ten-year period of nonuse occurred.
 

 Mr. Courtney’s nephew, Ken Courtney, Jr. (Ken), testified that the Courtney property was partitioned in 1974. Ken recalled a path from the lake to what is now referred to as Idle Acres Lane.
 
 [15]
 
 According to Ken, the path went through the east side of the catch pen located partially on property now owned by the Halls and Roba. He recalled having to go through a catch pen to get to the lake. Ken testified
 
 *517
 
 that use of this path from Idle Acres Lane to the lake ceased when Mr. Courtney built the house on the tract of land that was sold to Mr. Lucien in 1987. While building the house, Mr. Courtney built a barn on the top of the hill just before the lake and developed a lane from Highway 1047 due west to the lake. According to Mr. Hall and Ken, after the creation of this path, the Courtneys began using it to access the lake. Ken explained that the grass was overgrown around the lake up to the Halls’ property line and there is no visible sign of a road on Roba’s property.
 

 According to Mr. Lucien, when Roba bought the 12-acre tract in 1988, there was no fence dividing it from the 12.87-acre tract now owned by the Halls. The fence was installed by Mr. Courtney with Mr. Lucien’s help shortly after the 1988 sale. Ken explained that a barbed-wire fence was placed through the catch pen to mark the property line of Roba’s 12-acre tract. Mr. Hall explained that a fence runs from Highway 1047 along Mr. Lucien’s property, then Roba’s property, then Roba’s lake property forming one boundary with neighboring tracts to the north. As to the fence bordering Mr. Lucien’s and Roba’s property, Mr. Hall testified that since May 1988 there have been no gates that would allow vehicular access from north to south.
 

 In From the Halls’ house to Idle Acres Lane, there is a paved and gravel road. From the Halls’ house to the catch pen, there is an indentation in the grass indicating use up to the gravel road. Mr. Hall explained that the indentation in grass toward the catch pen occurred as a result of him driving across his pasture to reach the barn in which he stored tin from leftover jobs.
 

 According to Mr. Lucien, there was a gate next to the fence that entered the catch pen that has been used by the Halls, Radeckers, and Notos to reach Roba’s property to retrieve loose cattle. Mr. Lucien had travelled on the Halls’ property to and from Idle Acres Lane, with their permission, to deliver cattle to Roba’s property but not as a means of accessing the lake on Roba’s 51.3449-acre tract.
 

 Mr. Lucien admitted that the Courtneys did not promise a servitude to Roba for access to Idle Acres Lane. For proof of the 1974 servitude, Roba relied on a 2004 title opinion rendered in connection with the sale to the Halls that disclosed the possible existence of a servitude that had been reestablished several times.
 
 [16]
 
 According to Mr. Hall, Roba has never demanded removal of the fence in the catch.pen for purpose of accessing a servitude to Idle Acres Lane. It was not until 2006 that Mr. Lucien learned of the possibility of passing near the Halls’ home to get to Idle Acres Lane as a means of accessing Highway 1047. Accordingly, Mr. Lucien explained that he was deceived into not demanding removal of the fence and use of that servitude.
 

 Mr. Lucien explained that he has not stopped anyone from using the servitude on Roba’s property that goes to the lake. According to Mr. Lucien, Mr. Radecker and his son used the 1974 right-of-way when they went fishing in the lake. Mr. Lucien, his friends, and fishermen ac
 
 *518
 
 cessed the lake by traversing Mr. Lucien’s property and then Roba’s property.
 

 As to Mr. Lucien’s use of Idle Acres Lane and the Halls’ property, Mr. Hall stated that Mr. Lucien came on his property once with permission to retrieve some of his cattle from the front side of the catch pen. At that time, Mr. Lucien did not cross onto Roba’s | ^property. He explained that the second time Mr. Lucien came onto his property was to retrieve a sick cow that was being housed in Mr. Hall’s barn. Mr. Lucien came with a flatbed trailer to get the cow. According to Mr. Hall, Mr. Lucien has never come through the catch pen onto the Halls’ property.
 

 In addition to the 12.87-acre tract that they sold to the Halls, the Radeckers owned and resided on a tract of land that bordered the western side of the Halls’ property and the northern side of Roba’s 51.3449-acre tract. Mr. Hall explained that the fence on the Radeckers’ property line had a gate that was used by the Radeckers to access Roba’s property for fishing, thus it was unnecessary for the Radeckers to make use of the 1974 servitude which traversed the 12.87-acre tract that was transferred to the Halls to access the lake.
 

 After considering this evidence, the trial court found that Roba failed in its burden of proof. Based on our review of the record, we are unable to find that the trial court manifestly erred in finding that Roba failed to prove that someone had made use of the 1974 servitude in the manner contemplated by the creation of the servitude and as appertaining to the dominant estate
 
 [17]
 
 during the period of time required for the accrual of prescription.
 
 [18]
 
 Under the facts of this case, the possible use of a portion of the servitude was not sufficient to interrupt the prescription of nonuse, as that use was not shown to be within the extent and manner of the contemplated use, and such use was not appertaining to the dominant estate. Accordingly, this servitude was extinguished by nonuse for 10 years.
 
 [19]
 

 Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case.
 
 Jurisich v. Jenkins,
 
 97-1870 (La.App. 1st Cir.9/25/98), 722 So.2d 1008, 1011,
 
 reversed on other grounds,
 
 99-0076 (La.10/19/99), 749 So.2d 597. Roba cannot do this because any right that it may have had to traverse the area in question has prescribed.
 

 Decree
 

 For the foregoing reasons, the judgment of the trial court denying Roba’s motion for a preliminary injunction is affirmed. Having converted the appeal of the November 16, 2007 interlocutory ruling on the Halls’ exception raising the objection of prescription to an application for supervisory writs, to the extent that the trial court dismissed Roba’s claims against the Halls relative to the 1974 servitude, we
 
 *519
 
 deny Roba’s writ application. However, to the extent that the dismissal relates to claims against the Halls relative to the 1988 agreement that were not considered by the trial court in connection with the Halls’ exception, we grant Roba’s writ application, and the interlocutory ruling is reversed. This matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Roba, Inc.
 

 JUDGMENT AFFIRMED IN PART; APPEAL OF NOVEMBER 16, 2007 INTERLOCUTORY RULING CONVERTED TO APPLICATION FOR SUPERVISORY WRITS; WRIT DENIED IN PART; WRIT GRANTED IN PART AND RULING REVERSED IN PART; REMANDED.
 

 [1]
 

 . That deed was recorded on May 18, 1988, in conveyance book number 176, page 670, instrument number 062683, in the official records of the parish of St. Helena.
 

 [2]
 

 . Mr. Lucien was the vice president and secretary of Roba at that time.
 

 [3]
 

 . In connection with the 1987 deed, an agreement similar to the 1988 agreement had been executed by the Courtneys only, even though Mr. Lucien was a named party to the document.
 

 [4]
 

 . A title examination performed by an attorney in connection with Roba’s 1992 purchase revealed that "[t]here is no right of way from the above said property to a public road.”
 

 [5]
 

 . That survey was not offered into evidence.
 

 [6]
 

 . That act reflects that the Courtneys were divorced by this time.
 

 [7]
 

 . The Halls had purchased that tract on May 29, 1996. A May 18, 1998 survey map of that tract reflects a barbed-wire fence surrounding most of the 10.5-acre tract. It also disclosed the existence of a 12-foot gravel driveway
 
 *512
 
 extending south from “Idle Lane” (a 14-foot public gravel road) to the south property line near the Hall’s home.
 

 [8]
 

 . In December 1997, Mr. Luden transferred his property to the Luden Family Trust.
 

 [9]
 

 . Roba has separately appealed the judgment dismissing its claims against the Courtneys for damages and attorney fees on the basis of prescription.
 
 See Roba, Inc. v. Courtney,
 
 09-0508 (La.App. 1st Cir.8/10/10), 2010 WL 3196194, 47 So.3d 500.
 

 [10]
 

 .The Notos joined in the Halls' exception.
 

 [11]
 

 . Notably, the claims against the Halls in the third supplemental and amending petition relate to more than just the 1974 servitude.
 

 [12]
 

 . An appeal may be taken as a matter of right from an order or judgment relating to a preliminary injunction. LSA-C.C.P. art. 3612(C). An appeal from such a judgment must be taken within 15 days frpm the date of the order of judgment. LSA-C.C.P. art. 3612(C). This 15-day delay does not commence to run until the judgment is signed.
 
 See Metro Riverboat Assoc., Inc. v. Hilton Hotels Corp.,
 
 99-2271 (La.App. 4th Cir. 11/10/99), 746 So.2d 809, 811;
 
 Marlbrough v. Zar,
 
 98-38 (La.App. 5th Cir.5/27/98), 713 So.2d 1163, 1164. Generally, however, the mailing of notice of judgment, not the signing of judgment itself, acts as the triggering event for commencing the delay for filing both suspensive and devolutive appeals.
 
 Fraternal Order of Police v. City of New Orleans,
 
 02-1801 (La. 11/8/02), 831 So.2d 897, 900; LSA-C.C.P. art. 2087(A). In this case, the judgment denying Roba’s request for a preliminary injunction was signed on January 25, 2008, and notice of judgment was mailed on February 7, 2008. Accordingly, the motion for appeal relative to the denial of Roba's motion for a preliminary injunction filed on February 22, 2008, was timely.
 

 Relative to the Halls’ exception, since the trial court rendered a partial judgment as to less than all of Roba's claims against the Halls, the judgment did not constitute a final judgment, and it was not designated as a final judgment by the trial court.
 
 See
 
 LSA-C.C.P. art. 1915(B). An interlocutory judgment is appealable only when expressly provided by law. LSA-C.C.P. art. 2083(C). The interlocutory judgment relating to the peremptory exception filed in this case is not appealable. Since Roba's appeal of the denial of its motion for preliminary injunction is a restricted appeal, Roba had no right to include an appeal of the interlocutory judgment on the exception urging the objection of prescription. As a result, this court has no appellate jurisdiction to consider an appeal from the portion of the judgment related to the Halls’ exception.
 

 Nonetheless, this court has discretion to convert an appeal to an application for supervisory writs.
 
 See Stelluto v. Stelluto,
 
 05-0074 (La.6/29/05), 914 So.2d 34, 39. In the present case, the trial court rendered a decision on the Halls' exception in open court at the November 16, 2007 hearing. Roba filed a motion for devolutive appeal from that ruling on December 12, 2007, within the 30-day delay provided for seeking supervisory writs.
 
 See
 
 URCA Rule 4-3; LSA-C.C.P. art. 1914. Accordingly, we will convert the appeal of the November 16, 2007 interlocutory ruling relative to the Halls’ exception to an application for supervisory writs, and consider it under our supervisory jurisdiction.
 

 [13]
 

 . Predial servitudes are real rights burdening immovables. The creation of these rights requires the existence of two distinct immov-ables, belonging to different owners. These rights are for the benefit of an immovable, rather than a person. LSA-C.C. art. 646, Revision Comments — 1977, comment (b).
 

 [14]
 

 . The estate burdened with a predial servitude is designated as servient; the estate in whose favor the servitude is established is designated as dominant. LSA-C.C. art. 646, Revision Comments — 1977, comment (d).
 

 [15]
 

 . Mr. Hall stated that Idle Acres Lane ends at his mailbox and that a locked gate was placed at this point to prevent robberies.
 

 [16]
 

 . The attorney who prepared the title opinion testified that, in his title opinion, hé merely reiterated the findings from public records that were provided in an abstract, that is, that a right-of-way was granted to owners of the lake property from the highway to the lake pursuant to a sale and partition agreement that was duly recorded at book 87 page 88, with a notation of February 13, 1974. By his title opinion, the attorney stated that he was not giving opinion as to validity of the right-of-way.
 

 [17]
 

 . This assumes the lake property was the dominant estate and not the servient estate.
 

 [18]
 

 . The 1974 servitude of passage in this case was seemingly established for vehicular ingress and egress to enter the lake. It was not shown that the servitude had been used for that purpose during a period in excess of ten years.
 
 See Palgrave v. Gros,
 
 02-249 (La.App. 5th Cir.9/30/02), 829 So.2d 579, 584.
 

 [19]
 

 .In so ruling, we are mindful that doubt as to the extent or manner of exercise of a predial servitude is resolved in favor of the servient estate.
 
 See
 
 LSA-C.C. art. 730.