*502
 
 PARRO, J.
 

 | 2The plaintiff appeals a judgment sustaining an exception raising the objection of prescription in favor of two defendants and dismissing its claim against them for damages and attorney fees relating to an “Agreement for Right of Way.” For the following reasons, the judgment is affirmed, and the matter is remanded.
 

 Factual Background and Procedural History
 

 In 1988, Roba, Inc. (Roba) purchased a 12-acre tract of land from James Courtney, II and his wife.
 
 [1]
 
 To the east of the 12-acre tract, and adjacent thereto, was a 49.9678-acre tract of land that had been purchased by Robert L. Lucien
 
 [2]
 
 from the Courtneys in 1987 that fronted on Highway 1047. In connection with the sale of the 12-acre tract, a document entitled “Agreement for Right of Way” (the 1988 agreement) was executed on an unspecified day in May 1988 by the Courtneys only, even though Roba was a named party to the document.
 
 [3]
 
 In that document, it was declared that:
 

 they will establish the Right of Way from the “lake” property to Louisiana Highway 1047 on the North side of the Roba, Inc. property not to be included in the Roba, Inc. property. The Courtneys agree that the Right of Way will be created on the property they own on the North side of the Roba, Inc. property [the legal description of which was provided] ....
 

 This document was recorded on the same day as the deed, May 18, 1988, in conveyance book number 176, page 674, instrument number 062686, in the official records of the parish of St. Helena.
 

 In 1992, Roba purchased a 51.3449-acre tract of land from the Courtneys. The tract included a lake and borders Roba’s 12-acre tract to the west and the south. The 1992 cash deed does not refer to any right-of-way associated with the sale.
 
 [4]
 
 Neither the 1988 nor the 1992 deeds reflected that those tracts were burdened by a servitude.
 

 On April 30, 1998, Roba filed suit against the Courtneys for specific performance, | ¡¡seeking to enforce the 1988 agreement and its provision allegedly requiring the establishment of a right-of-way.
 
 [5]
 
 Roba demanded a 40-foot-wide right-of-way over the southern boundary of the Courtneys’ remaining property. In their answer, the Courtneys pled that Roba’s claim for the establishment of the right-of-way had prescribed. On November 2, 1998, Roba supplemented and amended its petition to add as defendants Mitchell R. and Pamela J. Radecker, who had purchased a 12.87-acre tract on July 28, 1998, from the Courtneys that bordered Roba’s property to the north and was allegedly subject to a proposed east/west right-of-way. Roba alleged that a plat of survey attached to the Radeckers’ deed disclosed that a portion of the tract was burdened with a right-of-way of an undetermined
 
 *503
 
 size along the south property line in favor of Roba and Mr. Lucien. A default judgment was confirmed on June 2, 1999, against the Radeckers, recognizing a 30-foot-wide right-of-way along the southern boundary line of their 12.87-acre tract as shown in a June 2, 1998 survey by Robert G. Barrilleaux & Associates, Inc. registered in conveyance book 222, page 177 in the official records of St. Helena Parish.
 

 Pursuant to an August 24, 2001 deed, Tony L. Noto, Jr. and his wife bought two tracts of land from Mr. Courtney.
 
 [6]
 
 Those tracts bordered the northern side of Mr. Lucien’s property. In the 2001 deed, the Notos acknowledged that this property was burdened by a servitude described in an agreement recorded in conveyance book 170, page 638 of the official records of St. Helena Parish.
 
 [7]
 

 On December 22, 2004, the Radeckers sold their 12.87-acre tract to William J. and Lori B. Hall, who owned a 10.5-acre tract that bordered the 12.87-acre tract on the north.
 
 [8]
 
 In connection with the 2004 sale, a title examination was performed by the same attorney who rendered a title opinion in connection with the 1992 sale to Roba. |4The 2004 opinion indicated that the Radeckers’ title was subject, in pertinent part, to the following:
 

 4) Right of way granted by [the Court-neys] across property to North of ROBA, Inc. and in favor of ROBA, Inc. from “Lake Property” to Louisiana Highway 1047 dated May, 1988 and duly recorded at Conveyance Book 176, Page 674.
 

 * * *
 

 11) The map and survey of the 12.87 acre tract of property belonging to [the Radeckers] and recorded at Conveyance Book 222, Page 177 indicates that there is a shed located on the hereinabove described tract of property that appears to be located within the right of way apparently established by ROBA, Inc. as set forth hereinabove.
 

 On February 22, 2006, Roba filed a second supplemental and amending petition, adding the Notos as defendants. In that supplemental and amending petition, Roba averred:
 

 The named Defendants, Courtneys, Radeckers, and Notos, have been amicably asked to acknowledge the right-of-way in favor of ROBA, Inc., granted by the Courtneys in the original acquisition and agreement to provide right-of-way and have refused to sign same. In actual fact, the right-of-way is encumbered by a fence with a lock and the parties, despite amicable demand, have not removed the restrictions for a free right-of-way.
 

 Additionally, Roba asserted for the first time a claim for damages and torney fees against all of the defendants. In particular, Roba alleged:
 

 The Defendants and their successors, as obligors, are liable to your Plaintiff for attorney’s fees, cost of providing or constructing the right-of-way in accordance with La. C.C. Art.1997 and 1998 and your Petitioner asks that after a
 
 *504
 
 trial on the merits, said damages be assessed against the Defendants, jointly, [severally], and
 
 in solido,
 
 to your Plaintiff.
 

 The Courtneys then filed an exception raising the objection of prescription as to Roba’s claim for damages and attorney fees. Their exception focused on the eight-year delay in Roba’s assertion of its claim for damages and attorney fees. They urged that they were prejudiced by the 2006 amendment to Roba’s petition, thus the amendment should not be allowed to relate back to the original filing.
 

 Roba opposed the exception in light of the Courtneys’ continuous denial of its right to a servitude as set out in the agreement to provide a right-of-way in connection with the original transfer of the property. According to Roba, the subsequent sales to Ifithe Radeckers and the Notos diluted its ability to have the servitude established. The claim for damages and attorney fees against the Courtneys was allegedly necessitated by the sale of property to the Radeckers and the Notos without disclosure of the 1988 right-of-way agreement. Accordingly, Roba asserted that the Courtneys’ actions “interrupted” prescription as to its claim for damages and attorney fees.
 
 [9]
 

 Following a hearing on the Courtneys’ exception of prescription regarding the second supplemental arid amending petition, the trial court analyzed the issues presented as follows:
 

 Exceptors maintain that the failure to bring claims for damages until the amendment of pleadings some eight years subsequent to the filing of the original petition should bar these claims by prescription. Plaintiff maintains that these claims should relate back to the filing of the original petition, under Article 1153 of the Code of Civil Procedure, and further contends that the actions of Exceptors amount to a continuous tort, which is ongoing, and has therefore not prescribed.
 

 In
 
 Spencer-Wallington, Inc. v. Service Merchandise, Inc.,
 
 562 So.2d 1060, (La.App. 1st Cir.1990), writ denied, 567 So.2d 109 (La.1990), the original corporate plaintiff filed an action seeking damages for breach of contract. A later claim for delictual damages then otherwise prescribed was not held to relate back to the original petition for purposes of defeating the claim of prescription.
 

 As stated in
 
 National Surety Corp. v. Standard Accident Insurance Co.,
 
 168 So.2d 858, (La.App. 2nd Cir.1964):
 
 *505
 
 ... one of the essential requirements for the application of prescriptive provisions, as established in our jurisprudence, is the notification to a defendant not only of the cause of the action, but the nature and extent of the demand. It therefore appears proper to conclude that a claim which either changes the nature or enlarges the extent of the demand is not protected against the limitation of a prescriptive period.
 

 IfiThe decision in
 
 Giroir v. South Louisiana Medical Center,
 
 475 So.2d 1040, (La.1985) allowed the relation back of an amended petition to allow the addition of the claims of children to that of their father, the original plaintiff in a wrongful death suit, and developed a four step analysis with respect to weighing whether an amended claim relates back to the filing of an original petition. One of the factors to be considered is whether the defendant is thereby prejudiced in preparing or conducting his defense.
 

 Certainly, in the present litigation, a defendant would be less concerned with pressing forward toward a resolution which would amount solely to the existence, nature and extent of a servitude of passage, than with a potential damage claim which would arguably continue to increase in size with the passage of time. This seems particularly true where the amendment claiming delictual damages is not brought until eight years from the filing of the original petition. For all these reasons, this Court concludes that the amendment should not relate back to the original filing, and would therefore be prescribed.
 

 As to the claim that the delictual claim is an ongoing claim or continuous tort, the court in
 
 Crump v. Sabine River Authority,
 
 1998-2826 (La.6/29/99) 737 So.2d 720, held that a “continuous tort” required that the operating cause of the injury be continuous, or repetitive. A single act giving rise to ongoing damages did not amount to a continuous tort based on the fact that damages continued to accrue.
 

 In
 
 Thomas v. State Employees Group Benefits Program,
 
 2005-0392 (La.App. 1st Cir.3/24/06), 934 So.2d 753, ... [t] he Court stated that to qualify as a continuing tort, there had to be both continuous action and continuous damage. If the “operating cause” of the damage is discontinuous in nature, even if the damage is continuous, the continuing tort theory is inapplicable.
 

 In the present case, any delictual claim is based upon damages for Plaintiffs lack of access to its property. While conceivably damages are ongoing, the claim is based on the alleged refusal to provide the servitude of access, a single event. At the very least as to the claim against exceptors, their involvement with the property apparently ceased in 2004, at which time they were no longer able to “refuse” to grant the servitude, as no longer owning the property over which the servitude would traverse. Where a damage claim was not brought until over two years later, prescription has occurred.
 

 Accordingly, the trial court sustained the Courtneys’ exception raising the objection of prescription and dismissed all claims against them for damages and attorney fees under LSA-C.C. arts.1997 and 1998 alleged in Roba’s second supplemental and amending 17petition. A motion for new trial by Roba was denied.
 
 [10]
 
 Roba appealed,
 
 [11]
 
 
 *506
 
 contending the trial court erred in sustaining the Courtneys’ exception and dismissing its claim for damages and attorney fees.
 
 [12]
 

 Discussion
 

 Liberative prescription is a mode of barring actions as a result of inaction for a period of time. LSA-C.C. art. 3447. Generally, the burden of proving that a cause of action has prescribed rests with the party pleading prescription; however, when the plaintiffs petition shows on its face that the prescriptive period has run, and the plaintiff contends there is a suspension or interruption of prescription, the burden is on the plaintiff to prove suspension or interruption.
 
 St. Romain v. Luker,
 
 00-1366 (La.App. 1st Cir.11/9/01), 804 So.2d 85, 88,
 
 writ denied,
 
 02-0336 (La.4/19/02), 813 So.2d 1083. Moreover, the ordinary rule of the burden of proof is that one who claims the benefit of an exception to the general law must show he comes within the exception.
 
 Houston General Ins. Co. v. Commercial Union Ins. Co.,
 
 612 So.2d 787, 789 (La.App. 1st Cir.1992),
 
 writ denied,
 
 614 So.2d 82 (La.1993).
 

 Roba’s claim for damages was first asserted on February 22, 2006, by way of its second supplemental and amending petition.
 
 [13]
 
 Following its 2001 sale to the Notos, the Courtneys no longer had ownership of the property affected by the contested right-of-way sought by Roba. Thus any claim against the Courtneys for interference with Roba’s use of the alleged east/west right-of-way would have prescribed prior to the | s2006 filing.
 
 [14]
 
 To the extent that Rsoba petition as supplemented and amended a second time in 2006 sets forth a claim for delictual damages against the Courtneys we find no error in the trial court’s decision to dismiss such a claim.
 

 However, Roba’s original petition sought enforcement of the 1988 agreement.
 
 [15]
 
 The prescriptive period applicable to an action alleging breach of contract is ten years.
 
 Alien v. Carollo,
 
 95-1840 (La.App. 1st Cir.4/4/96), 674 So.2d 283, 286;
 
 *507
 

 see
 
 LSA-C.C. art. 3499. The ten-year prescriptive period for contracts does not begin to run until the date the contract is allegedly breached.
 
 Dauterive Contractors, Inc. v. Landry and Watkins,
 
 01-1112 (La.App. 3rd Cir.3/13/02), 811 So.2d 1242, 1249;
 
 see Loewer v. Texas Gas Transmission Co.,
 
 615 F.Supp. 1, 2 (La.W.D.1984). In this case, the petition, as supplemented and amended, does not indicate the date on which the agreement was allegedly breached; nor does the “Agreement for Right of Way” by its terms specify a term for performance. The absence of a stipulated term for performance does not preclude the perfection of a valid obligation.
 
 Caston v. Woman’s Hospital Foundation, Inc.,
 
 262 So.2d 62, 64 (La.App. 1st Cir.),
 
 writ refused,
 
 262 La. 1087, 266 So.2d 220 (1972); see LSA-C.C. art. 1778. When no term for performance has been stipulated, the inference will be supplied that the parties intended the obligation to be undertaken within a reasonable time. What constitutes a reasonable time must be determined by the circumstances of each case.
 
 Perrin v. Hellback,
 
 296 So.2d 342, 344 (La.App. 4th Cir.),
 
 writ denied,
 
 300 So.2d 184 (La.1974).
 

 Liberative prescription commences from the date of an obligor’s breach of his obligation. As previously noted, the nature and validity of the 1988 agreement for a right-of-way and the resulting obligations have not yet been challenged by the parties or addressed by the trial court. However, with respect to the initial action for specific ^performance, this court concludes that such an action brought within 10 years of the execution of the agreement for a right-of-way would not have been barred by prescription.
 
 Cf. Loewer,
 
 615 F.Supp. at 2.
 

 Upon an obligor’s failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay, if the obligee so demands. LSA-C.C. art.1986. If specific performance is impracticable, the court may allow damages to the obli-gee.
 
 [16]
 
 Id.
 

 [17]
 

 Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court.
 
 Id.
 
 Roba’s claim for damages in its 2006 second supplemental and amending petition was premised on a breach of the Courtneys’ alleged obligation to perform
 
 [18]
 
 in connection with the 1988 agreement.
 
 [19]
 

 
 *508
 
 Damages for failure to perform a conventional obligation are measured by the loss sustained by the obligee and the profit of which he has been deprived.
 
 See
 
 LSAC.C. art.1995. Notably, in its second supplemental amending petition, Roba specifically sought damages pursuant to LSA-C.C. arts.1997 and 1998. Louisiana Civil Code article 1997 provides for the recovery of damages from an obligor that is in bad faith, and LSA-C.C. art.1998 authorizes the recovery of nonpecuniary loss.
 

 An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform. LSA-C.C. art.1997. By bad faith is not |lflmeant the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will.
 
 Williams v. Coe,
 
 417 So.2d 426, 430 (La.App. 1st Cir.1982). An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation. LSA-C.C. art.1997, Revision Comments — 1984, comments (b) & (c). Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuni-ary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obli-gor knew, or should have known, that his failure to perform would cause that kind of loss. LSA-C.C. art.1998. Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure to perform, to aggrieve the feelings of the obligee.
 
 Id.
 
 A contract made for the gratification of a nonpecuniary interest means one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value. LSA-C.C. art.1998, Revision Comments — 1984, comment (c).
 

 Although we find that the allegations in Roba’s original petition for specific performance were sufficient to notify the Courtneys of Roba’s possible claim for damages under LSA-C.C. art.1986 in connection with their alleged nonperformance of the 1988 agreement, we note the absence of any allegation in that petition that the Courtneys intentionally and maliciously failed to perform their obligation or that the 1988 agreement was. intended to gratify a nonpecuniary interest. In the absence of such allegations, we are unable to find that the allegations of Roba’s 1998 petition were sufficient to notify the Court-neys of Roba’s possible claims for the types of additional damages authorized by LSA-C.C. arts.1997 and 1998.
 
 [20]
 
 Accordingly, we find that the 2006 amendment setting forth a claim for damages and attorney fees under LSA-C.C. arts.1997 and 1998 does not relate back to the date of filing of the original pleading.
 
 [21]
 

 See
 
 LSA-C.C.P. art. 1158.
 

 Decree
 

 For the foregoing reasons, we affirm the judgment of the trial court. This matter is remanded for further proceedings consistent with this opinion. The costs of this appeal are assessed to Roba, Inc.
 

 AFFIRMED AND REMANDED.
 

 [1]
 

 . That deed was recorded on May 18, 1988, in conveyance book number 176, page 670, instrument number 062683, in the official records of the parish of St. Helena.
 

 [2]
 

 . Mr. Lucien was the vice president and secretary of Roba at that time.
 

 [3]
 

 . In connection with the 1987 deed, an agreement similar to the 1988 agreement had been executed by the Courtneys only, even though Mr. Lucien was a named party to the document.
 

 [4]
 

 . A title examination performed by an attorney in connection with Roba’s 1992 purchase revealed that "[tjhere is no right of way from the above said property to a public road.”
 

 [5]
 

 . A notice of the pendency of that action was filed with the clerk of court for the parish of St. Helena.
 

 [6]
 

 . That act reflects that the Courtneys were divorced by this time.
 

 [7]
 

 . This reference is to the "Agreement for Right of Way” executed in connection with the Courtneys’ 1987 sale to Mr. Lucien.
 

 [8]
 

 .The Halls had purchased the 10.5-acre tract on May 29, 1996. A May 18, 1998 survey map of this tract reflects that a barbed-wire fence surrounded most of the 10.5-acre tract. It also disclosed the existence of a 12-foot gravel driveway extending south from “Idle Lane” (a 14-foot public gravel road) to the south property line near the Hall’s home.
 

 [9]
 

 . In a third supplemental and amending petition filed on January 10, 2007, Roba sought damages and attorney fees from the defendants in connection with their interference with Roba’s use of an alleged right-of-way dating back to 1974, which provided access to Idle Acres Lane. Roba alleged:
 

 The owners-in-succession are aware of the right-of-way and, in actual fact, are using the right-of-way up to the line of the Roba, Inc. property, but they have consciously and consistently denied access to this servitude which was already established in title and part of the acquisition by Roba, Inc. from the Courtneys to the detriment and damages to Roba, Inc. Plaintiff, Roba, Inc. asks the Court to order the owners of the property, the Halls, to open the gate and make the access from the lake property to the highway available to Roba, Inc., as was included in their sale and the successive sales of said property. Roba, Inc. holds [the Courtneys], the Radeckers, the Halls and the Notos responsible for any and all damages, attorney’s fees in the premises, and lack of access and convenience to be shown at the trial on the merits of this case. A title opinion rendered ... for the Hall/Ra-decker sale in 2004 reflects the right-of-way. Roba, Inc. was deliberately deceived by the Courtneys in the exclusion of the established right-of-way. A copy of the opinion rendered is attached as Exhibit "B.”
 

 [10]
 

 . The Honorable Elizabeth P. Wolfe presided at the hearing on the motion for new trial.
 

 [11]
 

 . Since the trial court rendered a partial judgment as to less than all of the claims, demands, issues, or theories relative to the
 
 *506
 
 Courtneys, the judgment did not constitute a final judgment. To be appealable, such a judgment had to be designated as a final judgment by the trial court after an express determination that there is no just reason for delay.
 
 See
 
 LSA-C.C.P. art. 1915(B)(1). Pursuant to a rule to show cause issued by this court, the Courtneys obtained the needed designation, and the record has been supplemented accordingly. Therefore, the judgment is properly before us on appeal.
 

 [12]
 

 .Roba has separately appealed a judgment denying its motion for preliminary injunction, sustaining an exception filed by the Halls raising the objection of prescription regarding a 1974 servitude asserted in a third supplemental and amending petition that was filed on January 10, 2007, and dismissing Roba’s claims relating to the 1974 servitude.
 
 See Roba, Inc. v. Courtney,
 
 09-0509 (La.App. 1st Cir.8/10/10), 2010 WL 3196195, 47 So.3d 509.
 

 [13]
 

 . An additional claim for damages associated with a 1974 servitude was set forth in Roba’s 2007 third supplemental and amending petition.
 

 [14]
 

 . Delictual actions are subject to a liberative prescription of one year, which runs from the date injury or damage is sustained. LSA-C.C. art. 3492.
 

 [15]
 

 . The nature and validity of this agreement and resulting obligations have not been challenged by the parties or addressed by the trial court. Therefore, these issues are not properly before us on appeal. For purposes of this appeal, we will assume that the "Agreement for Right of Way” constitutes an otherwise valid contract. Nonetheless, we note that the establishment of a predial servitude by juridical act is an alienation of a part of the property; hence, it is subject to the requirements governing the validity and effect of acts of disposition. LSA-C.C. art. 708, Revision Comments — 1977, comment (d).
 

 [16]
 

 . An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance. LSA-C.C. art. 1994. An award of such damages is governed by LSA-C.C. arts.1995 though 2012.
 
 See Lombardo v. Deshotel,
 
 94-1172 (La. 11/30/94), 647 So.2d 1086, 1090;
 
 see also Bourgeois v. Dunn,
 
 01-1185 (La.App. 1st Cir.6/21/02), 822 So.2d 708, 711.
 

 [17]
 

 .
 
 See Lombardo,
 
 647 So.2d at 1090;
 
 Charter School of Pine Grove, Inc. v. St. Helena Parish School Bd.,
 
 07-2238 (La.App. 1st Cir.2/19/09), 9 So.3d 209, 222.
 

 [18]
 

 . As we noted in footnote 15, the nature and validity of the 1988 agreement and resulting obligations have not yet been addressed by the trial court. Therefore, we are uncertain of the Courtneys’ ultimate obligation in this matter.
 

 [19]
 

 .The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate. LSA-C.C. art. 651. The owner of the servient estate may bind himself by a personal obligation to perform certain affirmative duties in connection with a predial servitude. These obligations may be heritable, but they are not transferred to successors by particular title without express stipulation to that effect.
 
 *508
 
 LSA-C.C. art. 651, Revised Comments — 1977, comment (c).
 

 [20]
 

 . See
 
 Womack v. Custom Homes and Renovations,
 
 02-0193 (La.App. 4th Cir.6/5/02), 820 So.2d 1196, 1203,
 
 writ denied,
 
 02-1871 (La.9/13/02), 824 So.2d 1165.
 

 [21]
 

 . Notably, any claim that Roba may have asserted in its 2006 supplemental and amending petition for other types of monetary damages allowed by LSA-C.C. art.1986 was not affected by the judgment.