| JOHN F. SCHWEGMANN, | * | NO. 2021-CA-0556 |
|---|---|---|
| JOHN F. SCHWEGMANN, AS | | |
| THE TRUSTEE OF THE JOHN | * | |
| F. SCHWEGMANN TRUST #2 | | COURT OF APPEAL |
| AND A & S #2, L.L.C. | * | |
| | | FOURTH CIRCUIT |
| VERSUS | * | |
| | | STATE OF LOUISIANA |
| H. HUNTER WHITE, III, M. | * * * * * * * | |
| WALKER BAUS, WHITE III, | | |
| LLC F/K/A JLH, L.L.C., | | |
| NASSAU PARTNERS LLC, AS | | |
| SUCCESSOR TO | | |
| WORTHMORE CAPITAL, | | |
| LLC, K-LOW, LLC AND | | |
| SCHWEGMANN WESTSIDE | | |
| EXPRESSWAY, INC. | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-08377, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Tiffany Gautier Chase, Judge
Pro Tempore Lynn M. Luker)


Dayal Reddy
2901 Ridgelake Drive, Suite 105
Metairie, LA 70002

Richard E. Anderson
2901 Ridgelake Drive, Suite 105
Metairie, LA 70002


        COUNSEL FOR PLAINTIFF/APPELLANT


Kyle D. Schonekas
SCHONEKAS EVANS McGOEY & McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, LA 70112

Ian L. Atkinson
SCHONEKAS, EVANS McGOEY & McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, LA 70112


COUNSEL FOR DEFENDANT/APPELLEE


**AFFIRMED**
**April 20, 2022**

*DLD*
*TGC*
*LML*

This case, which arises out of a bankruptcy, involves claims for breach of contract and breach of fiduciary duty. The plaintiffs (John F. Schwegmann, John F. Schwegmann, as the trustee of the John F. Schwegmann Trust #2 and A&S #2, L.L.C. ("the Schwegmann interests")) appeal the trial court's granting of a peremptory exception of prescription in favor of the defendants (H. Hunter White, III, M. Walker Baus, White III, LLC F/K/A JLH, L.L.C., Nassau Partners LLC, as successor to Worthmore Capital, LLC, K-Low, LLC and Schwegmann Westside Expressway, Inc.). For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

John G. Schwegmann, Jr. opened the first Schwegmann Bros. Giant Super Market on St. Claude Avenue in New Orleans in 1946 with the help of his brother, Paul, and friend, Wilfred Meyer.

Beginning in 1977 and 1978, John G. Schwegmann, Jr. transferred control of the grocery store chain to his son, John F. Schwegmann. In 1979, John F. Schwegmann purchased his father's stock in Schwegmann Giant Super Markets,

1

Inc. and Schwegmann Westside Expressway, Inc. ("Schwegmann Westside"), becoming its majority stockholder and chief executive officer. Schwegmann Westside owned much of the real estate on which the Schwegmann Giant Super Markets were located.

In 1997, the Schwegmann grocery business was sold to Kohlberg & Co. ("Kohlberg"), a private equity firm headquartered in New York. Most of the real estate upon which the Schwegmann's grocery stores were located, and certain other related real estate parcels, were not included in the sale to Kohlberg, but retained in a limited liability company called JLH, L.L.C. ("JLH"), which was organized by John F. Schwegmann in 1997. Schwegmann Westside owned 70.28% of JLH.

Within a relatively short period of time after the sale of Schwegmann's grocery business to Kohlberg, the subsidiary that acquired the grocery business went into bankruptcy. This adversely affected the financial condition of JLH and other Schwegmann related entities that relied on the cash flow from the leases of the grocery store real estate. JLH entered bankruptcy proceedings in 1999.

On February 22, 2000, Schwegmann Westside filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana.[1] Entities controlled by H. Hunter White and Walker Baus (the White interests) had acquired the vast majority of Schwegmann Westside's unsecured debt. The Bankruptcy Court confirmed a

---

[1] *In re Schwegmann Westside Expressway, Inc.*, No. 00-11040 (E.D. La.).

bankruptcy plan that required the White interests to issue warrants to the Schwegmann interests (Mr. Schwegmann and entities under his control) that would allow them to buy back the unsecured debt for roughly twenty-nine million dollars. Under the plan, the Schwegmann interests were required to pay this amount and exercise their warrants by September 1, 2007. This did not happen.

On August 30, 2017, the Schwegmann interests filed a lawsuit against the White interests, contending that the White interests breached the plan by frustrating the Schwegmann interests' ability to exercise their warrants. The Schwegmann interests also accused the White interests of breaching specific plan terms requiring the White interests to timely prepare the warrants, pay distributions to lower the unsecured debt, and provide financial information necessary to evaluate whether to exercise the warrants and obtain financing for the large sum required. The Schwegmann interests also maintain that the White interests breached a fiduciary duty owed to the Schwegmann interests.

On March 21, 2021, the White interests filed peremptory exceptions of prescription/peremption and no cause of action. The White interests contended that it was clear on the face of the petition that any alleged breach of the plan or fiduciary duty occurred on or before August 28, 2007, more than ten years before the lawsuit was filed on August 30, 2017.

The exceptions came before the trial court for a hearing on June 3, 2021. At the hearing, the White interests relied on their pleadings, while the Schwegmann interests offered the testimony of John F. Schwegmann and his sister Melba

Margaret Brown. Following the hearing, the trial court granted the White interests' exception of prescription and dismissed the Schwegmann interests' claims with prejudice; the White interests' exception of no cause of action was denied as moot. The Schwegmann interests now appeal the trial court's judgment.[2]

**DISCUSSION**

On appeal, the Schwegmann interests raise numerous assignments of error. However, the vast majority of them involve the issue of whether the trial court erred in granting the White interests' peremptory exception of prescription.

"When an exception of prescription is filed, ordinarily, the burden of proof is on the party pleading prescription." *Eastin v. Entergy Corp.*, 2003-1030, p. 5 (La. 2/6/04), 865 So.2d 49, 54 (*citing Lima v. Schmidt*, 595 So.2d 624, 628 (La. 1992). "However, if prescription is evident on the face of the pleadings, as it is in the instant case, the burden shifts to the plaintiff to show that the action has not prescribed." *Id.*; *see also Campo v. Correa*, 2001-2707, p. 7 (La. 6/21/02), 828 So.2d 502, 508; *Primus v. Touro Infirmary*, 2005-0662, p. 2 (La. App. 4 Cir. 1/25/06), 925 So.2d 609, 610.

Under Louisiana law, a confirmed Chapter 11 bankruptcy plan is a contract. *Denham Homes, L.L.C. v. Teche Federal Bank*, 2014-1576, p. 16 (La. App. 1 Cir. 9/18/15), 182 So.3d 108, 118. "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." La. C.C. art.

---

[2] On June 3, 2021, the trial court granted the defendants' exception of prescription in open court. Both the defendants and the plaintiffs submitted judgments, which were both signed by the trial court and that were substantively similar, on June 14, 2021 and June 17, 2021, respectively. On December 7, 2021, the trial court determined that the June 17, 2021 judgment was moot.

4

3499.  Accordingly, the prescriptive period on a breach of contract claim is ten years.  *Hotard's Plumbing, Elec. Heating & Air, Inc. v. Monarch*, 2015-0180, p. 5 (La. App. 5 Cir. 3/16/16), 188 So.3d 391, 394.  Prescription on a breach of contract claim begins to run on the date the contract is allegedly breached.  *See Ohle v. Uhalt*, 016-0569, p. 15 (La. App. 4 Cir. 2/1/17), 213 So.3d 1, 11; *Roba, Inc. v. Courtney*, 2009-0508, p. 8 (La. App. 1 Cir. 8/10/10), 47 So.3d 500, 507.

The plaintiffs' petition refers to Mr. White and Mr. Baus as "officers and directors" of the debtor and seeks to hold them liable for their "management of SWE."  La. R.S. 12:1502 applies to corporate mismanagement claims against officers, directors, managers and others.  La. R.S. 12:1502 provides for a prescriptive period of three years.  Accordingly, any breach of fiduciary duty claims against individual defendants such as Mr. White and Mr. Baus would be subject to a one year prescriptive period and a three-year preemptive period.  *See* La. R.S. 12:1502.

"Damage is sustained for the purposes of prescription when it has manifested itself with sufficient certainty to support the accrual of a cause of action," even though the plaintiff may come to a more precise realization of the damages later.  *Bell v. Glaser*, 2008-0279, p. 5 (La. App. 4 Cir. 7/1/09), 16 So.3d 514, 517, *writ denied*, 2009-1790 (La. 11/6/09), 21 So.3d 309.  "Thus, even where there are ongoing damages, prescription does not run from each incident of damages; rather, it runs from the day that actual and appreciable damages were noticed or suffered by the claimant."  *Id.*

5

To soften the occasional harshness of prescriptive statutes, Louisiana courts have recognized a jurisprudential exception to prescription: *contra non valentem currit praescriptio*, which means that prescription does not run against a person who could not bring his suit. *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992). The Louisiana Supreme Court recognizes four instances where *contra non valentem* is applied to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act to effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. *Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034, 1054-55 (La. 1987).

In the instant case, the Schwegmann interests filed their petition on August 30, 2017. However, in their petition, they state that the White interests "did not have the finalized SWE Warrants ready for the plaintiffs until August 28, 2007, four days before the Redemptive Event deadline of September 1, 2007. By this time, the White interests' breaches of the SWE Third Amended Plan . . . made it impossible for the plaintiffs to cause the Redemptive Event to occur by September 1, 2007." Therefore, based on the face of the petition and the Schwegmann

6

interests' own admission, it is apparent that any alleged breach of contract occurred on or before August 28, 2007, more than ten years before the suit was filed on August 30, 2017, and would be prescribed. Likewise, the Schwegmann interests' claims for breach of fiduciary duty are prescribed as any alleged breach occurred well over three years before any lawsuit was filed in this case.

This premise is supported by the evidence at trial, which consisted of the testimony of the former warrant holders (John F. Schwegmann and Melba Margaret Schwegmann Brown). The trial testimony focused on the White interests' alleged failure to provide requested financial information in advance of the September 1, 2007 deadline. Mr. Schwegmann testified that he made demands for this information as far back as 2001. Mr. Schwegmann also sent repeated demand letters from his attorneys, dating back to at least November 2006. The Schwegmann interests actually raised these issues before the Bankruptcy Court prior to September 1, 2007.

Based on the plain language of the petition, the evidence adduced at trial and the actions of the Schwegmann interests prior to September 1, 2007, it is evident that the Schwegmann interests believed that the White interests breached the plan and any fiduciary duty well before the September 1, 2007 deadline. These facts also forestall any *contra non valentem* argument because it is clear that the Schwegmann interests had the knowledge that would support any claim of breach well before September 1, 2007 or even August 28, 2007.

The Schwegmann interests failed to put on any evidence to prove that they could have exercised their warrants before September 1, 2007. They do not support their assertions that the White interests could have provided the required information and could have made the required distributions to cause the redemption. As this argument was not made below, it is now waived. *See Council of City of New Orleans v. Washington*, 2009-1067, p. 3 (La. 5/29/09), 9 So.3d 854; *Chaumont v. City of New Orleans*, 2020-0017, p. 4 (La. App. 4 Cir. 6/3/20), 302 So.3d 39, 45-46. In any event, there was no credible evidence demonstrating that the Schwegmann interests could have exercised their warrants at that time. On September 1, 2007, Mr. Schwegmann had a $5,000,000.00 judgment against him and no loan in place.

**CONCLUSION**

For the above and foregoing reasons, we find no error in the trial court's maintaining the defendants' peremptory exception of prescription. Accordingly, the trial court's judgment is affirmed.

**AFFIRMED**